THE INTERNATIONAL BANK OF CHICAGO *et al.*

*v.*

ROBERT E. JENKINS *et al.**

*Filed at Ottawa September 27, 1882.*

1. WRIT OF ERROR—*when it lies to Appellate Court—judgment—when final.* On demurrer to a plea of the Statute of Limitations filed to a writ of error in the Appellate Court, the judgment of the court is necessarily final as to the only issue tendered. If the plea is good, a final judgment dismissing the action follows, and if it is bad, the entire defence fails, and on sustaining the demurrer a judgment of reversal will be entered, which is final, although the cause may be remanded; and a writ of error lies from this court to review such judgment when the amount involved exceeds $1000.

2. SAME—*statutes construed.* Section 8 of the Appellate Court act, and section 90 of the Practice act, having been enacted on the same day, and having taken effect at the same time, must be construed *in pari materia*, and given the same effect as if both were embraced in the same act. The first named section only allows an appeal or writ of error when the order, judgment or decree is final, while section 90 allows an appeal or writ of error not only when the judgment of the Appellate Court is final, but also when the judgment, etc., is such that no further proceedings can be had in the court below except to carry into effect the mandate of the Appellate Court.

3. SAME—*is a new suit.* The suing out of a writ of error in the Appellate Court to review the proceedings in a cause in the circuit court, is the commencement of a new suit, and not the continuation of the suit below, to which it relates.

4. LIMITATION—*for and against assignee in bankruptcy.* Under section 5057 of the United States Statutes, the limitation of two years of suits by or against an assignee in bankruptcy is confined to cases between such assignee and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee.

5. SAME—*when interest is adverse to assignee.* A bank filed a bill to foreclose a mortgage given by A to B to secure certain notes, which B indorsed, and pledged to the bank as collateral security for a loan to him, and also as a security for any and all indebtedness the bank might hold against him after the payment of the loan. B, by his answer and cross-bill, set up that his indebtedness to the bank had been paid, and claimed various payments of usury, which he asked to have applied on his indebtedness, and

---

* This case and three others, between substantially the same parties, numbered 19, 22 and 23, were considered together, and the opinion in this case applies to them all.

that if so applied his entire indebtedness would be satisfied. He also prayed for an account to be taken, and for a decree for the return of the collaterals. The circuit court having found in favor of the bank, B's assignee in bankruptcy sued out a writ of error from the Appellate Court to reverse the decree: *Held*, that the claim of the bank and that of B were not only adverse, but hostile, within the meaning of the United States law limiting suits by or against assignees in bankruptcy, and that the writ of error was barred if not brought within two years from the time the cause of action accrued to the assignee.

6. SAME—*practice—how presented in Appellate Court.* The bar of the Statute of Limitations to a writ of error may be presented by motion to dismiss as well as by plea, when it appears on the face of the record that the writ is barred, and no circumstances are alleged to take the case out of the statute.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the plaintiffs in error:

A writ of error is a suit at law or in equity, within the meaning of the two years limitation in the Bankrupt law. Powell's App. Ct. Proc. 46, 326; *Ripley* v. *Morris*, 2 Gilm. 381; *Hickman* v. *Haines*, 5 id. 20; *Smith* v. *Robinson*, 11 Ill. 119; *Roberts* v. *Trustees*, 32 id. 474; 1 Tidd's Prac. *1196; *Wadhams* v. *Gay*, 73 Ill. 421; *Union Canal Co.* v. *Woodside*, 11 Pa. St. 176; *Weston* v. *City Council*, 2 Pet. 449; *Bailey* v. *Glover*, 21 Wall. 346.

As to the proper construction to be given to sec. 5057 of the Revised Statutes of the United States, and holding the limitation therein provided applies to writs of error by an assignee in bankruptcy, see *Bailey* v. *Glover*, 21 Wall. 342; *Marshall* v. *Knox*, 16 id. 551; *Cleveland* v. *Bocrum*, 24 N. Y. 613; *Wilson* v. *Childs*, 8 Bank. Rep. 527; *Coit* v. *Robinson*, 19 Wall. 285.

A plea of the Statute of Limitations to a writ of error is not required when the record discloses that the time has

elapsed for bringing the suit. A motion to dismiss is the proper practice in such a case. *Brooks* v. *Morris*, 11 How. 204; *Bertrand* v. *Taylor*, 87 Ill. 235; *Parkhurst* v. *Race*, 100 id. 558; *Henry County* v. *Winnebago Drainage Co.* 52 id. 454; *Humbert* v. *Trinity Church*, 7 Paige, 195; *Bailey* v. *Glover*, 21 Wall. 342.

A plea of the Statute of Limitations in the Appellate or Supreme Court is a plea of confession and avoidance, and if overruled, the judgment is to be reversed. *Page* v. *People*, 99 Ill. 418.

The order of the Appellate Court sustaining the demurrer to the plea of the Statute of Limitations was final, and no further proceedings upon the subject matter of the plea could be had in the circuit court, and hence a writ of error lies from this court to review such order. *Baber* v. *Pittsburg, Cincinnati and St. Louis R. R. Co.* 93 Ill. 342; *O'Dowd* v. *Russell*, 14 Wall. 402; *Martin* v. *Hunter*, 1 Wheat. 352; *Holmes* v. *Jennison*, 14 Pet. 562; *Weston* v. *City Council, etc.* 2 id. 464; *Johnson* v. *Humboldt Ins. Co.* 91 Ill. 92; *Fleischman* v. *Walker*, 91 id. 321.

Mr. W. T. Burgess, for the defendants in error:

The only question made in the pleadings was, whether Walker owed the bank anything. He did not deny the pledge, and unless he did, there was no property right involved. Walker sought to have an account taken between him and the bank, which was denied by dismissing his bill. In this there is no "adverse interest touching any property or rights of property transferable to or vested in" the assignee. The assignee took the equity of redemption of Walker, and no more. Bump on Bankruptcy, 500, sec. 5044.

In the cases cited by the plaintiffs in error, the title to the property was set up in bar of the right to redeem, and have no application to a case where the right to redeem is admitted. *Price* v. *Phillips*, 3 Robertson, (N. Y.) 448; *Smith* v.

*Crawford*, 4 N. B. 38; *Will* v. *Stickney*, 15 id. 23; *Sedgwick* v. *Casey*, 4 Bank. Rep. 496; *Carr* v. *Lord*, 29 Maine, 51.

When the complainants below, by bill in equity, asserted their right to foreclose, they necessarily thereby affirmed Walker's right to redeem, and his assignee stands in his shoes. *Locke et al.* v. *Caldwell*, 91 Ill. 421; 1 Hilliard on Mortgages, sec. 2.

That an appeal does not lie from, or a writ of error issue upon, the judgment of the Appellate Court upon a plea in bar of the Statute of Limitations sustaining a demurrer to the plea, and reversing and remanding the cause for further proceedings in the court below before final judgment, counsel cited the provisions of the statute,—secs. 2, 11, art. 6, of the constitution, and sec. 9, chap. 110, Revised Statutes; *Jenkins* v. *Greenbaum*, 95 Ill. 11; *Jenkins* v. *International Bank*, 97 id. 568; *Knox* v. *Exchange Bank*, 12 Wall. 379.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a writ of error to reverse a judgment of the Appellate Court for the First District, and a motion has been made to dismiss the suit on the ground that the judgment of the Appellate Court was not final.

The facts, so far as may be necessary to obtain a proper understanding of the question involved, are these: The International Bank of Chicago obtained a decree in a proceeding to foreclose a mortgage against Samuel J. Walker, in the circuit court of Cook county, on the 25th day of April, 1878. Walker was afterwards adjudged a bankrupt, and Jenkins appointed assignee. On the 21st day of April, 1881, the assignee, Jenkins, sued out a writ of error from the Appellate Court to the circuit court, to reverse the decree of foreclosure which had been rendered in the circuit court in 1878. The International Bank appeared in the Appellate Court and filed a plea of the United States Statute of Limitations in bar of the suit, under section 5057 of the

Bankrupt act, which declares: "No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to, or vested in, such an assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not, in any case, revive a right of action barred at the time an assignee is appointed." To this plea the assignee filed a general demurrer, which the court sustained, and entered a judgment reversing the decree of the circuit court, and remanded the cause.

The question presented by the motion to dismiss the writ of error is, whether this is to be regarded as a final judgment, within the meaning of the statute which authorizes an appeal or writ of error to review a judgment which is final.

Section 8 of the Appellate Court act provides: "In all cases where the amount involved is less than $1000, in actions *ex contractu*, and the judgment is affirmed, it shall be final." The amount here is over $1000. It then declares: "In all other cases appeals shall lie, and writs of error may be prosecuted, from the final judgments, orders or decrees of the Appellate Courts to the Supreme Court."

Section 90 of the Practice act provides: "In all criminal cases, * * * and in all other cases where the sum or value in controversy shall exceed $1000, exclusive of costs, which shall be heard in any of the Appellate Courts upon errors assigned, if the judgment of the Appellate Court be that the order, judgment or decree of the court below be affirmed, or if a final judgment or decree be rendered thereon in the Appellate Court, or if the judgment, order or decree of the Appellate Court be such that no further proceedings can be had in the court below, except to carry into effect the mandate of the Appellate Court, any party to such cause shall be permitted to remove the same to the Supreme Court

by appeal or writ of error." As was held in *Baber* v. *Pittsburg, Cincinnati and St. Louis R. R. Co.* 93 Ill. 342, section 90 of the Practice act, and section 8 of the Appellate Court act, having been enacted by the legislature on the same day, and having taken effect at the same time, must be construed *in pari materia,* and given the same effect as if both were embraced in the same act. Section 8, as will be seen upon an examination of its language, only allows an appeal or writ of error when the order, judgment or decree is final, while section 90 seems to go a step further, and not only allows an appeal or writ of error when the judgment of the Appellate Court is final, but also when the judgment, order or decree of the Appellate Court be such that no further proceedings can be had in the court below except to carry into effect the mandate of the Appellate Court.

In order to determine whether the judgment in the Appellate Court falls within the terms of the section of the statute last quoted, it may be necessary to consider the nature of the issue tendered by the plea, and the character of the judgment rendered on that issue. The suing out of the writ of error in the Appellate Court was the commencement of a new suit, as held in *Roberts* v. *Fahs,* 32 Ill. 474. The defendant in the suit interposed but one defence to that action—that the suit was barred by the Statute of Limitations. Now, when a demurrer was filed, of necessity there could be but one of two judgments rendered on the issue tendered, either of which would be final, so far as the issue involved was concerned. If the plea was good in law, then the writ of error would have to be dismissed. If, on the other hand, the plea was bad,—not sufficient in law,—as no other defence was interposed, the judgment or decree of the circuit court would have to be reversed—in other words, the plea confessed the error, but sought to avoid it by the operation of the Statute of Limitations.

In so far, then, as the only issue involved in the action was concerned, the judgment could not be otherwise than a final judgment. If the plea was good, a final judgment dismissing the action would be rendered; if bad, the entire defence to the action failed, and the court would render a final judgment of reversal in sustaining the demurrer. It is true the court remanded the case to the circuit court, but when it reaches that court no action whatever can be had on the issue which was decided in the Appellate Court, in so far as the Statute of Limitations is concerned, which was the sole defence in the Appellate Court. When the cause comes on for trial, the circuit court can do nothing but follow the mandate of the Appellate Court.

In *Johnson* v. *Humboldt Ins. Co.* 91 Ill. 92, where an action was brought on a policy of insurance, the insurance company interposed a plea of limitations,—that the suit was not brought within twelve months from the time the loss occurred, according to the terms and conditions of the policy. The plaintiff in the action demurred to the plea, and the Superior Court sustained the demurrer, and rendered a judgment on the policy in favor of the plaintiff. On appeal to the Appellate Court it was held that the plea presented a defence to the action, and reversed the judgment of the circuit court. The plaintiff in the action, for the purpose of reversing the decision of the Appellate Court, took an appeal to this court. The appeal was entertained, and the judgment of the Appellate Court affirmed. It is true that the jurisdiction of this court to entertain the appeal on the ground that the decision of the Appellate Court was not a final judgment, was not raised by counsel or discussed in the opinion; still the appeal was entertained by this court, and the case decided on its merits. This would not have been done had the court considered that it had no jurisdiction to entertain the appeal, as it has been the uniform practice in

this court to dismiss on appeal, at any progress of the case, when it appears the court has no jurisdiction.

In the case cited there was but one question presented in the Appellate Court for decision, viz., was the action barred. When a final decision was rendered on that question, this court entertained jurisdiction, because it regarded the judgment as one under which no further proceedings could be had in the court below, except to carry into effect the mandate of the Appellate Court. The same principle which led to the decision in the case cited, must control in this case. Here, the Appellate Court made a final decision on the only question before it, viz., the bar of the Statute of Limitations, and no further proceedings could be had in the court below, so far as this question was concerned, except to carry into effect the mandate of the Appellate Court. The Supreme Court of the United States has had occasion to pass upon section 25 of the Judiciary act (now section 709 of the Revised Statutes of the United States), which is similar in terms, in regard to a final judgment or decree that may be reviewed on appeal or writ of error, to our own statute. And the views here expressed will be found to be fully sustained by the decisions of that court. *O'Dowd* v. *Russell*, 14 Wall. 402; *Weston* v. *City of Charleston*, 2 Pet. 464; *Haines* v. *Fennison*, 14 id. 562; *Martin* v. *Hunter*, 1 Wheat. 352. The motion to dismiss the appeal will be overruled.

As stated before, the court sustained a demurrer to the plea of the Statute of Limitations, and that decision is relied upon as error. This question involves a construction of section 5057 of the United States Statutes, which is as follows: "No suit, either at law or in equity, shall be maintainable, in any court, between an assignee in bankruptcy and a person claiming an adverse interest touching any property, or rights of property, transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And

this provision shall not, in any case, revive a right of action barred at the time an assignee is appointed." The proper construction to be placed upon this statute presents a question not free from difficulty,—one upon which courts may well disagree.

As respects the first part of the section, that is, whether a writ of error may be regarded as a suit at law or in equity, we are satisfied that the issuance of a writ of error is the commencement of a new suit. In *Ripley* v. *Morris*, 2 Gilm. .382, a motion was made to dismiss a writ of error on the ground that the plaintiff in error was a non-resident, and no bond for costs had been filed under the statute, which required a bond in all cases, in "law or equity," where the plaintiff was a non-resident of the State. The motion was resisted on the ground that the writ of error was a continuation of the suit commenced in the circuit court, and not a new suit. In the decision of the question the court said: "A writ of error, like a *scire facias*, is considered a new action, (2 Tidd's Practice, 1141,) and the statute relative to costs requires the court to dismiss the suit whenever a non-resident commences an action, either in the circuit or Supreme Court, without filing security for the costs." See, also, *Hickman* v. *Haines*, 5 Gilm. 20, and *Smith* v. *Robinson*, 11 Ill. 119, where the same doctrine is announced. This question, that the writ of error was the commencement of a new action at law or in equity within the intent and meaning of the statute, we think is fully settled by the former decisions of this court, and we are fully satisfied that these decisions are in harmony with the current of authority on the question.

But it will be observed that by the terms of the section the limitation of two years is confined to cases between an assignee in bankruptcy and a person claiming an adverse interest touching any property, or rights of property, transferable to or vested in such assignee, and it is contended

that the matters involved between the parties do not present a case which falls within the terms of the statute,—that there is no claim of an adverse interest.    From an examination of the record, it appears that the International Bank filed a bill in equity to foreclose a trust deed executed by Henry N. Walker to secure the payment of a promissory note, payable to the order of Samuel J. Walker.    This note S. J. Walker indorsed to the bank to secure three notes, of $4000 each, given for money loaned, and also made an agreement with the bank that it should hold the notes as a general collateral for any and all indebtedness the bank had against him after the payment of the three notes.    Samuel J. Walker answered the bill, and set up that his indebtedness to the bank had been paid.    He also set up that all his transactions with the bank were usurious.    He offered to pay legal interest, and prayed that usurious interest should be applied upon his indebtedness, and if the interest was so applied, his entire indebtedness would be satisfied and paid.    He asked that an account be taken, and that a decree be rendered for the return of the collaterals held by the bank.    He also filed a cross-bill, in which he set up the same matters, and prayed that he might redeem the securities held by the bank.  ·A decree was rendered which found the amount due on the collateral notes to be $23,116.66, amount due on the three principal notes, $17,092.86, and the amount due on the entire indebtedness from S. J. Walker to the bank, $172,474. The decree directed a foreclosure, and sale of the property, and the proceeds applied first in the payment of the principal indebtedness for which they were pledged, and the residue on the general indebtedness due from Walker to the bank.

It will be observed that the notes and mortgage which the bank filed the bill to foreclose were executed by Henry N. Walker, and they were held as collateral security for a debt of Samuel J. Walker.    The bank claimed to own these collaterals, and the right to foreclose the mortgage, while on

the other hand the assignee of Samuel J. Walker claims that the indebtedness of Samuel J. Walker has been paid to the bank, and that it has no right to hold the collaterals or foreclose the same, but they ought to be surrendered. Is not this claim set up by these parties adverse, within the meaning of the statute? We are of opinion that it is not only adverse, but hostile in its nature. Each of the contending parties asserts title to this property,—one claiming the right to foreclose and appropriate the proceeds of the foreclosure to his own use, the other that it should be delivered to him as owner thereof, to be used in such manner as he may deem proper. Where a person takes possession of a tract of land, claiming to be the owner, although he may in fact have no title, his possession is regarded as adverse to all the world, and if he occupies the land for a prescribed period, his possession will ripen into an absolute title. Upon the same principle, where a person is in possession of any other species of property, claiming to be the owner, his title will be regarded as adverse. The whole controversy in the case by Walker and his assignee is, that the title of the bank to the notes and mortgage has terminated,—that the bank in fact has no title to the securities, and they should be surrendered up to them as owners thereof,—and we perceive no ground upon which it can be held that this is not a suit between an assignee and a person claiming an adverse interest touching property or rights of property. The object of the statute doubtless was to require a speedy settlement of a bankrupt estate, and thus prevent the assets from being wasted in costs, and long, tedious litigation.

In *Bailey* v. *Glover*, 21 Wall. 342, the Supreme Court of the United States, in discussing this section of the statute and its policy, after referring to the evil consequences likely to flow, which might protract litigation by an assignee, said: "To prevent this as much as possible, Congress has said to the assignee, you shall commence no suit two years after the

cause of action has accrued to you, nor shall you be harassed by suits when the cause of action has accrued more than two years against you. Within that time the estate ought to be settled up and your functions discharged, and we close the door to all litigation not commenced before it has elapsed."

In *Cleveland* v. *Borem*, 24 N. Y. 613, the Statute of Limitations in the Bankrupt act of 1841, which does not differ from the present act, came before the court for consideration, and in the discussion of the question the court said, per SUTHERLAND, J.: "In my opinion the two years' limitation by section 8 of the Bankrupt act (Acts of Congress, 1841, 5 Stat. at Large, p. 446,) is a bar to this action. It is provided by section 8 that 'no suit at law or in equity shall, in any case, be maintained by or against such assignee, or by or against any person claiming an adverse interest touching the property and rights of property aforesaid (the property of the bankrupt vested in the assignee by the decree), in any court whatsoever, unless the same shall be brought within two years after the declaration and decree of bankruptcy, or after the cause of suit shall have accrued.' I think the interest or claim of the mortgagees touching the mortgaged property, under the mortgage, was adverse to the legal title and interest in the property vested in Waddell, the assignee, by the declarations and decrees of bankruptcy, within the meaning of this provision. The mortgage was due, and was a charge or lien on the legal title or interest vested in the assignee by the decrees of bankruptcy; and although possession under the mortgage before foreclosure and sale would not have been adverse to the mortgagors or those claiming under them, yet I think the interest of the mortgagees was an adverse interest touching the mortgaged property at the time of the making of the decrees of bankruptcy, within the meaning of the 8th section of the act above quoted. I think the interest of the mortgagees may be said to have been an adverse interest touching the property to the extent of the

amount due on the mortgage, for there was no right of redemption without paying, or offering to pay, the amount due on the mortgage." This decision, although rendered by a State court, was referred to with approval in *Gifford* v. *Holmes,* 98 U. S. 252.

From what has been said it follows that the decision of the Appellate Court in the two cases, docket Nos. 16 and 23, in which pleas were filed, will have to be reversed.

In two cases (docket Nos. 19 and 22) no plea was filed, but a motion was made in the Appellate Court to dismiss the writs of error, on the ground that it appeared on the face of the record that the writs were not sued out within two years. In the Supreme Court of the United States the uniform practice has been to dismiss on motion, where it appears on the face of the record that the suit is barred. (*Brooks* v. *Noris,* 11 How. 204.) The English practice required a plea setting up the statute, but we perceive no good reason why the bar of the Statute of Limitations may not be presented by motion to dismiss as well as by plea, where it appears on the face of the record that the suit is barred, and no circumstances are alleged to take the case out of the statute. *Henry County* v. *Winnebago Drainage Co.* 52 Ill. 456.

The decision of the Appellate Court will therefore, in Nos. 16, 19, 22 and 23, be reversed, and the causes will be remanded.

*Judgment reversed.*

Mr. CHIEF JUSTICE SCOTT, dissenting.