BILL WILLIAMS, PLAINTIFF IN ERROR, VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. Under the Laws of this State, Judges of the Circuit Courts are authorized to allow writs of error to issue in cases of misdemeanors, and crimes not capital, as well as in capital cases.

2. When the record contains all the evidence introduced in the case, and upon a careful examination it is clear it does not warrant the finding of the jury, this court will reverse the judgment.

Writ of error to the Circuit Court for Alachua county, Judge Vann of the Third Circuit presiding.

The facts of the case except the testimony are stated in the opinion.

The testimony as it appears in the bill of exceptions is as follows:

The State, to maintain the issues on its part, produced as a witness one Mrs. Laura Britt, who being sworn testified as follows: The prisoner came to my house and said he had not seen us for a long time, and thought he would stop awhile. My husband was not at home; I was alone with my children and a little colored boy named Thomas; I don't remember the month, or day of the month; I don't know what county it was in; the prisoner said he would like to have something to eat; I told him I had nothing cooked but some cold bread; he said that would do; I then sent my children, and a little colored boy staying on

the place into the woods to get some wood; the woods they went to to get the wood was twenty or thirty yards in front of the house; the prisoner took a chair and set down under the window eating the bread I gave him, while I was in the house; in a little while my little girl came back crying and said that her little brother would not let her have her wood that she had gathered; the prisoner told her not to cry, but come with him and he would get her a nice little armful of wood. My daughter, Armadella, is about seven years old; the prisoner picked her up in his arms and went off to the woods about two or three hundred yards away; (my recollection is that the place where the children went to get the wood, where they first met Bill Williams, was in front of the house, some twenty or thirty yards, and that when Bill took the little girl he carried her in a different direction altogether, and when seen by Thomas, buttoning up her drawers, he was four or five hundred yards off.—W. A. Hocker.) When the rest of the children had gone for wood, my little boy came running back in a little while to the house and said I had better run after Bill, (that is the prisoner's name,) for he might drown his sister in the pond down there. I became frightened and went running and screaming in the direction the prisoner had gone; I came to where the prisoner was in a few moments; the prisoner was walking along by the edge of a pond, leading my little girl by the hand; she was not crying; she was walking along quietly with the prisoner, holding his hand; I took my little girl and carried her to the house; she did not seem to have been crying nor scared; in a little while the prisoner came back to the gate and called me; I told him I did not want to see him; he then went off quietly away. The prisoner is recognized as being a good and harmless man in the community in which he lives; I have known nothing bad about him be-

fore, and we have known him a good while; he had been to our house often before, and the children all liked him, as he used to play with them and amuse them; he was counted a good carpenter and a working man; when I went home I examined my little girl and found she was bruised in her private parts; her thighs and the back part of her legs were all black and blue; I don't know whether the prisoner did the bruising or not; I don't know how it was done.

The witness was first asked about the obligations of an oath and testified that he knew if he testified falsely he should be punished for it, and this was the witness who, if I am not entirely at fault, testified that the route taken by Bill in leading the little girl, Armadella, was not the one which the children went to get the wood. [I understand this to be also an amendment by Mr. Hocker, the State Attorney, of the testimony as proposed for the bill of exceptions.—REPORTER.]

Thomas Johnson, the second witness on behalf of the State, testified as follows:

I know Bill Williams (the prisoner); he came to Mr. Britt's one day, and me and Mr. Britt's little boy and girl went in the woods to get some wood; the little girl went back to the house crying because her little brother took her wood away from her. In a little while Bill came to where we were with the little girl in his arms; she wanted to get down when they got to where we were and Bill put her down, and she walked on with him holding his hand, and Bill told her he would get her a nice little turn of wood, and they went walking on to the woods; her brother run to the house and told his mother that she had better watch Bill; his mother came running down to where we were screaming, and I run in the direction Bill had gone; I soon came to where him and the girl was; the dog barked

and Bill got up from behind a log and sat down on the log; the little girl was standing up beside him quietly and he was buttoning the little girl's drawers up; I was a little ways off; the little girl was not crying; I did not hear her cry any time, and she did not seem to be scared; her mother took the girl to the house; Bill went on around the pond; I found Bill almost five hundred yards from the house; I am nearly thirteen years old.

Mr. Britt, (this witness testified that the place where the offence charged in the indictment was committed in the county of Alachua, and State of Florida, and he also testified as to the time which, as I have no copy of the indictment, I have forgotten—W. A. H.) the third witness on behalf of the State, testified as follows:

I was away from home when this thing happened; I was at Flemington; when I came back on Monday my wife told me what had happened; she asked me to examine my little girl, I told her I did not like to, but that I could; I examined her and she was bruised about her thighs and the back of her legs; the offence for which the prisoner is being tried occurred on Saturday before the Monday on which I examined her. The place where my house is is in Alachua county and State of Florida. The prisoner is recognized as being a good working man and a well behaved man in the community in which he lives. I have never known him to do anything mean before. He has often been to my house and played with the children and they all liked him.

Mr. B. H. Kendrick, the fourth and last witness on behalf of the State, testified as follows:

I am acting deputy sheriff at Micanopy, in this county; I went in search of Bill Williams; I had a writ for him several days after the alleged offence, and I found him in the woods squatting down in some bushes on the edge of

a hammock; he had a gun leaning up near him by a tree, and as I rode up he got up and picked up his gun; I rushed upon him with my horse and leveled my pistol at him and told him what I was after, and he quietly gave up his gun and went along with me; he made no attempt to shoot.

*Taylor & Sanchez* and *Ashby & Thrasher* for Plaintiff in Error.

*The Attorney-General* for Defendant in Error.

MR. JUSTICE VANVALKENBURGH delivered the opinion of the court:

At the January Term of the Circuit Court, held in and for the county of Alachua, in the month of January, A. D. 1883, the plaintiff in error, Bill Williams, was indicted. Such indictment charged that the plaintiff in error, " on the ninth day of October, in the year of our Lord one thousand eight hundred and eighty-two, with force and arms, in the county of Alachua aforesaid, in and upon one A. B., a female, feloniously and wilfully did make an assault with inten ther, the said A. B., then and there feloniously to ravish," &c.

The defendant plead not guilty, and was tried at the same term of the court and was found guilty.

The counsel for the defendant then made a motion for a new trial, upon the ground that the verdict was contrary to the evidence, the law and the charge of the court. The court overruled his motion for a new trial, and the counsel for the defendant duly exeepted to such ruling of the court.

The defendant was sentenced to ten years imprisonment at hard labor in the State Prison.

The Judge of the Circuit Court granted a writ of error, and the cause is now here in pursuance of such writ.

The errors assigned are as follows :

"Because the verdict of the jury was contrary to the evidence and the weight of the evidence.

" Because there was no evidence upon which the verdict of the jury can be sustained."

The Attorney-General moved here to dismiss the writ of error, for the reason that, not being a capital case, the Judge of the Circuit Court had no power or authority under the statutes to grant the same. [The Attorney-General announced at the bar it was merely his purpose to have the practice settled, and that if the motion was granted a writ of error might issue here returnable *instanter*.—REPORTER.]

Chapter 1104, Laws 1861, provides " that hereafter writs of error in capital cases in the Circuit Courts of this State shall be allowed only in the manner and upon the terms provided now by law for writs of error in cases of misdemeanors and crimes not capital: *Provided, however*, That the Judges of the several Circuit Courts shall have the same power in allowing or directing writs of error to issue in such cases as the Justices of the Supreme Court have."

Section 2, Chapter 1561, Laws 1866, reads as follows : " *Be it further enacted*, That the Judges of the Circuit Courts be, and they are hereby empowered to issue writs of error, mandamus and *quo warranto* in vacation, as well as in term time."

We are of the opinion that it was the intention of the Legislature enacting these laws to enlarge the powers of the Judges of the Circuit Court, and to authorize them to allow writs of error, in cases of " misdemeanor, and crimes not capital," as well as in capital cases. The words " such cases " in the proviso of Chapter 1104, referring to all the

cases mentioned in the former part of the section, we can certainly see no objection to thus extending the authority of such Judges. Section 2 of Chapter 1561 places no restriction upon such Judges. They are authorized to "issue writs of error, mandamus and *quo warranto* in the vacation, as well as in term time."

The motion to dismiss this writ of error upon that ground is denied.

The record shows that four witnesses were called, and examined upon the part of the State to prove the alleged offences; none were introduced upon the part of the defendant. We have carefully and critically examined this evidence, embodied in the record, and fail to find in it anything to warrant the verdict of the jury, not even sufficient to warrant a verdict of simple assault, much less a verdict of assault with intent to commit the heinous crime charged in the indictment.

As a general rule this court will not interfere with the verdict of a jury when there is evidence before them which will justify their finding, but in a case of this character, where the penalty is so severe under our statute, there should be at least some evidence of guilt to warrant the sentence of the law. Snowden vs. The State, 17 Fla., 386; Green vs. The State, 17 Fla., 671.

Judgment reversed and new trial awarded.