## THE STATE OF FLORIDA VS. GEORGE N. MITCHELL.

1. A writ of error in a criminal cause is not a writ of right and does not issue as a matter of course on the application of the party convicted, but only upon the judicial allowance by a court, justice or judge having authority to allow the same.

2. In allowing writs of error in criminal causes, judicial discretion is always exercised liberally in favor of the defendant.

3. The Judge of the Criminal Court of Record of Duval county has power to allow a writ of error in a criminal cause in which the judgment of that court is reviewable by the Supreme Court, and the clerk may, upon the allowance of the writ, issue both

that writ and the writ of *scire facias ad audiendum errores*. These powers are not exclusive of the power of the Supreme Court or a Justice thereof to allow the writ of error, nor of that of the clerk of the latter court to issue these writs.

4. A writ of error is a new action, and not a mere continuation of the former suit.

5. An order allowing a writ of error does not compel the complaining convict to prosecute a suit in error; it merely enables him to do it, and if he wishes to avail himself of this permission he may do so by applying to either the clerk of the appellate court or of the court which rendered the judgment for the writ, and the clerk should issue it.

6. An order allowing a writ of error is a judicial permission to institute a suit in error to review the judgment complained of; it is not the writ, and until the writ is actually issued (if not it may be both issued and lodged in the court whose judgment is to be reviewed) there is no suit in error, and the appellate court has no jurisdiction of the cause. The writ is the process by which the record or cause is removed to the appellate court.

7. Though a compliance with the provisions of section 5, p. 455, McClellan's Digest, as to payment of costs and entering into recognizance with sureties, operates of itself, without any order declaring the effect of such compliance, to make the writ of error when issued stay the further execution of the sentence of the court, as also does a compliance with the several provisions of section 7, p. 456, Ibid, still this superseding effect does not even in a bailable case authorize the discharge of the defendant if he be in custody, but by the express provision of section 5, p. 455, Ibid, there must be an order, by the court or judge allowing the writ, for his discharge; which order should always be made as a matter of course, in bailable cases, where all the supersedeas provisions necessary to such discharge are complied with.

8. A compliance with the supersedeas provisions of the statute will of itself give a writ of error in criminal cases the effect of superseding the further execution of the sentence, and no order that a compliance with those provisions shall have this super-

seding effect, is necessary, and the officers of the law must take notice of and act in obedience to the effect of such mere compliance. The practice which obtains, however, of declaring in the order allowing the writ, that a compliance with the supersedeas provisions will have the effect to make the writ operate as a supersedeas, though adding nothing to the effect of such compliance, is not harmful, but may aid the ministerial officers of the courts.

9. An order allowing a writ of error in a criminal cause, and a compliance with the provisions of the statute intended to make the writ operate as a supersedeas, do not suspend or supersede the execution of the sentence where no writ is actually issued ; nor, where no writ is issued, do such an order and such compliance, and a further order that the compliance shall make the writ operate as a supersedeas. There must be at least a writ actually issued (or, it may be, issued and served,) after it is allowed, and it is the writ or suit in error that the statute intends shall operate as a supersedeas to the judgment, upon compliance with the supersedeas provisions of the statute.

10. Service of a writ of error is made by lodging the writ in the court which rendered the judgment sought to be reviewed.

11. Where an order allowing a writ of error from the Supreme Court to a criminal court of record is made by the judge of the latter court, and such order directs that the writ shall operate as a supersedeas, and it appears that the party convicted has made the oath and furnished proofs which, under section 7, page 456, McClellan's Digest, cause a writ of error to operate as a supersedeas in a bailable case if he remains in custody, and at the term of the former court to which such writ, if issued, should have been made returnable, the State moves to dismiss the writ, but no writ of error, has in fact issued; the motion must be denied. and for the reason that there is no writ of, or suit in, error to dismiss, and the court has no jurisdiction of any such suit or writ.

12. Where a writ of error is allowed, but not issued, the warrant for the execution of the sentence should be issued and executed.

The State of Florida v. George N. Mitchell.—Opinion of Court.

Motion to docket and dismiss case.

The facts in the case are stated in the opinion of the court.

*The Attorney-General* for motion.

No Counsel appearing, *contra.*

RANEY, C. J.:

The Attorney-General moves to docket and dismiss this case. It appears that on May 4th, 1891, in the Criminal Court of Record of Duval county, Mitchell was found guilty of an assault with intent to murder one Hubbard. Motions in arrest of judgment and for a new trial having been made and overruled, Mitchell was sentenced on the same day to imprisonment in the State prison at hard labor for the period of two years. Sixty days were allowed for preparing a bill of exceptions. On the 8th day of the following June the following order was made in the cause by that court: "Upon application made in open court for writ of error and supersedeas in the above cause, it is considered and ordered by the court that a writ of error do issue, and that said writ of error be a supersedeas upon the affidavit of insolvency of defendant on file; and it appearing to the satisfaction of the court that the allegations contained therein are true." There is in the informal transcript of the record filed here by the Attorne-General in support of the motion, an affidavit of

Mitchell to the effect that he has no property or other means of payment, either in his possession or under his control, for the payment of costs in the cause, and has not divested himself 'of his property for the purpose of receiving benefit from this oath, and that he is utterly unable to enter into the recognizance required. There is also an affidavit of James H. Hamilton, S. B. Chapman and Moses Taylor to the same effect.

The ground of the motion to dismiss is, that no other or further step has been taken by Mitchell to prosecute his writ of error and give effect to the same. Mitchell is still in the Duval county jail.

The transcript was filed here on the 23d day of March of the present year (1892), of which day the motion as amended is made, though in fact the Attorney-General had a few days previously moved on a certificate of the Clerk of the Criminal Court that no writ of error had been issued, and a certified copy of the above order granting the writ of error and directing that it should operate as a supersedeas.

The controlling question is, whether or not the actual issue of the writ is essential to our jurisdiction.

The Criminal Court of Record of Duval county was established by an act of June 3d, 1887 (Acts of 1887, p. 111), and by the 23d section of a statute approved the same day, and entitled "An act prescribing the jurisdiction and powers, and regulating the proceedings in the Criminal Court of Record," (Chapter 3731, pp. 100-103, Acts of 1887,) it is provided that the same rules, practice and procedure that obtain in appeals

and writs of error from the Circuit to the Supreme Court, shall obtain in appeals from the Criminal Courts of Record to the Circuit Court and the Supreme Court. Though we do not admit that, under our present statutory system, such a thing as an "appeal," as distinguished from a writ of error, obtains for administering our appellate jurisdiction in criminal causes, still our opinion is, that the effect of this statute is to authorize writs of error as the proper mode of administering our appellate jurisdiction over the Criminal Courts of Record. Such has been the practical construction of the act for some years, and we think it correct. Wooten vs. State, 24 Fla., 335, 341; 5 South. Rep., 39; Houston vs. State, 24 Fla., 356; 5 South. Rep., 48. The judge had the power to allow the writ, and the clerk had authority to issue it and a *scire facias ad audiendum errores;* their powers coinciding with those of the judge and clerks of the Circuit Court in cases of convictions in that court. McClellan's Digest, sec. 4, p. 455, sec. 9, p. 456, sec. 2, p. 843; Williams vs. State, 20 Fla., 391. These powers are not exclusive of the power of the Supreme Court or of a Justice thereof to allow the writ of error, nor of that of the clerk of the latter court to issue these writs.

A writ of error is a new action, and not a continuation of the former suit, the alleged errors in which it is sought to have reviewed and corrected. 2 Tidd's Practice, 1141; International Bank vs. Jenkins, 104 Ill., 143; Ripley vs. Morris, 2 Gilman, 381; 6 Am. & Eng. Enc. of Law, p. 812.

In Mussina vs. Cavazos, 6 Wall., 355, where it was held that if the writ of error is served by depositing it with the clerk of the court rendering the judgment, and he makes return by sending to the appellate court a transcript in due form, the latter court has jurisdiction to decide the case, although the original writ may be lost or destroyed before it reaches the appellate court, it is said by Judge Miller, speaking for the Supreme Court of the United States: We have repeatedly held that the writ of error in cases at law is essential to the exercise of the appellate jurisdiction of this court; and in Crippen vs. Livingston, 12 Fla., 638, our own court observed that "the record of the inferior court is not transferred, its proceedings are not affected, and, indeed, but little follows the simple issuing of the writ," and the settled doctrine of the former court is that a writ of error is not "brought" within the meaning of the statute limiting the period for bringing such writs, until the writ is filed in the court which rendered the judgment. Brooks vs. Norris, 11 How., 204; Cummings vs. Jones, 104 U. S., 419; Scarborough vs. Pargoud, 108 U. S., 567; Polleys vs. Black River Improvement Co., 113 U. S., 81; and in Crippen vs. Livingston, where our own statute providing that no judgment in any cause shall be reversed or avoided for any error or defect therein unless error be "commenced, or brought and prosecuted within two years after such judgment signed and entered of record," was under consideration, it was held that a writ of error was not commenced, or brought and prosecuted, within the meaning of the act, until the writ is

filed in the court which rendered the judgment. See also Sammis vs. Wightman, 25 Fla., 547, 552; 6 South. Rep., 173. These cases also hold that when the writ is not so filed, it is immaterial that it may have been issued or tested before the expiration of the statutory period of limitation.

Unless there is something in the statutes governing writs of error in criminal cases, which changes the rule, we cannot see that the issue (if not, it may be, the issue and service) of a writ of error is not essential to our jurisdiction, or that at least until a writ has been issued there is no suit in or writ of error to dismiss.

Writs of error in criminal cases are not writs of right in this State. They were such in capital cases under the third section of the act of January 11th, 1848, sec. 3, p. 455, McClellan's Digest, but this was changed by the act of February 12th, 1861, sec. 11, p. 456, McClellan's Digest, which puts capital cases upon the same footing in this respect as other criminal cases. Before a writ of error can issue in any criminal case, there must be an inspection of the record by a court, or a justice or judge, given by the statute the power to act in the premises, and such court, or justice or judge, must be of the opinion that there "is just cause for allowing a writ of error," and an order allowing it must be made, and thereupon the writ of error is to issue.

The order for a writ is, however, not the writ. It is, in so far as the convicted person is concerned, a judi-

cial permission to institute a suit in error to review the judgment of the inferior court.    Whereas in civil cases no such judicial sanction of the merit of a proposed review of a judgment or decree is required, and a writ of error may be brought as a matter of right and without conditions, by a losing defendant, and by a losing plaintiff, upon the simple conditions of paying the costs which have accrued in the cause, and giving bond, with surety, for those which may accrue in the prosecution of the writ of error, the law-makers have yet seen fit to prevent a test before appellate courts of the correctness of judgments in criminal causes, unless and until the sanction of a judicial allowance of such a suit in error is obtained.    McIver & Chamberlain vs. Marshall, 24 Fla., 42.    An order of this character does not compel the complaining convict to prosecute the suit; it merely authorizes or enables him to do so, and if he wishes to avail himself of this permission, he may do so by applying to the clerk, either of the Supreme Court, or of the court which rendered the judgment, for the writ, and the clerk should issue it.    Until the writ is issued there is no suit in error under the statute.    McClellan's Digest, sec. 4, p. 455.

There are in the statute certain provisions as to superseding the judgment complained of.

In the first place, the statute of 1848, as applicable to convictions in the Circuit Court, and such statute as modified by the above-mentioned Criminal Court of Record act, as applicable to convictions in the Crim-

inal Courts of Record controlled by it, provides that the writ of error shall not operate as a supersedeas to the execution of the judgment, sentence or order, except upon the payment by the plaintiff in error of all costs which have accrued, and by securing by recognizance to be entered into with one or more sureties, before the clerk of the court rendering the judgment, in a sum sufficient to secure the payment of such judgment, fine and future costs as may be adjudged and affirmed in the Supreme Court, and is also conditioned that the party shall be personally forthcoming to answer and abide the final order, sentence or judgment that may be passed in the premises by the Supreme Court, and in case the cause is remanded to the Circuit Court, then, that the plaintiff in error shall personally be and appear at the next term of the court in which he was convicted, in the county in which the cause was originally tried, thereafter to be held, to answer in the premises, and not to depart from the court without leave thereof. It is, however, expressly provided that where the judgment is one of capital punishment, the person of the party convicted shall be the only security required for his forthcoming to answer as aforesaid. Section 5, p. 455, *Ibid*. It is also further provided that if the party applying for such writ of error shall be in custody under sentence of conviction, the allowance of the writ and the obtaining of such supersedeas shall not discharge such party from custody, except by order of the court, or of the justice,

allowing the writ of error, and that such an order shall be made only in cases bailable according to the course of the common law, or by the statutes of this State. Section 6, pp. 455-6, *Ibid.*

It is plain from these provisions that they contemplate where the case is not capital, a release of the convicted party from custody ; and yet though the payment of costs and the taking of the recognizance by the clerk, give the writ of error the effect to suspend or supersede the execution of the sentence, they do not of themselves authorize the release of the party, if he be in custody, by the officer having him in custody. On the contrary, an express order to that effect by the court or judge allowing the writ is essential by the very terms of the statute.

The statute does not, however, contemplate a suspension of the execution of the judgment only in cases where costs can be paid and recognizance given as required above, but it also provides that when the defendant shall be utterly unable to pay the costs in whole or in part, and shall make oath before the court or the clerk thereof, and also establish by credible testimony, that he has no property or other means of payment either in his possession or under his control, and has not divested himself of his property for the purpose of receiving the benefit of his oath, and is also utterly unable to enter into the recognizance required to secure the payment of such judgment, fine and costs,

the writ of error, such oath being made and evidence produced, shall be a supersedeas without such pay· ment, if the defendant remain in custody; or, in cases not capital, upon his entering into recognizance with one or more sureties, conditioned that he shall be personally forthcoming to answer the judgment of the Supreme Court, and for his appearance before the Circuit Court. Section 7, page 456, *Ibid.*

To secure discharge from custody, in bailable cases, where the plaintiff in error is utterly unable to pay ·costs, in whole or in part, and makes oath and furnnishes the proof, contemplated by the preceding, or seventh, section, as to his having no property or other means of payment, and as to his not having divested himself of his property, and as to his being unable to enter into recognizance to secure the payment of the judgment, fine and future costs, the plaintiff in error must not only enter into a recognizance with one or more sureties conditioned that he shall be personally forthcoming to answer and abide the final order, sentence or judgment that may be passed in the premises by the Supreme or other appellate, as the case may be, ·court, and in case the cause is remanded to the Circuit ·or other trial court, as the case may be, then that he shall personally be and appear at the next term of the ·court in which he was convicted, in the county in which the cause was originally tried, thereafter to be held, to answer in the premises, and not to depart from the

court without leave thereof, but there must be also an express order for his discharge, as provided by the fifth section of the act, *supra*. Of course he must remain in custody, even in bailable cases, nothwithstanding the inability contemplated by the seventh section and full proof thereof, unless he gives the recognizance for being forthcoming required thereby and obtains the order for his release.

This order should never be refused in any bailable case where the provisions precedent thereto are complied with.

It is clear, we think, that the purpose of this statute of 1848, as amended in 1861, is, in the first place, to make the right to a writ or suit in error in criminal causes dependent on judicial discretion—a discretion always exercised liberally—and, second, to prescribe the conditions under which the writ or suit shall operate a supersedeas to the enforcement of the judgment; and, third, to expressly limit what might otherwise be understood to be an effect of a supersedeas, *proprio vigore*, in bailable cases, by requiring an order of discharge from custody when the applicant for the writ is in custody. There is, however, nothing in the statute that dispenses with the writ as essential to the exercise of our appellate jurisdiction. The writ is the process by which the record or cause is removed to the appellate court. Brooks vs. Norris, *supra*; Kitchen vs. Randolph, 93 U. S., 87. When there has never

been a writ issued, to say nothing of the necessity for its service, there is no suit in error pending. Carrol vs. Dorsey, 20 How., 204; Blitz vs. Brown, 7 Wall., 693; Washington County vs. Durant, *Ibid*, 694; Ballance vs. Forsyth, 21 How., 389; Slaughter-House Cases, 10 Wall., 273. Writs of error from the Supreme Court of the United States to State courts do not issue as matter of right, but only upon allowance by the proper judge of the State court, or by a justice of the United States Supreme Court. Twitchwell vs. Commonwealth, 7 Wall., 321; Gleason vs. Florida, 9 Wall.. 779. In Bondurant vs. Watson, 103 U. S., 278, a case of a writ of error to the Supreme Court of Louisiana, where a paper intended as a writ of error was issued and bore *teste* in the name of the Chief-Justice of that court, and was signed by its clerk and sealed with its seal, instead of being in the name of the President of the United States, and bearing *teste* in the name of the Chief-Justice of the Supreme Court of the United States, the writ also not complying with section 1004 of the Revised Statutes of the United States, providing that such writs may be issued by the clerks of the Circuit Court under the seals thereof, as well as by the clerk of the Supreme Court, it was said, in effect, that there was nothing even purporting to be a proper writ, and therefore nothing to amend by and the suit was dismissed, the court saying: "The Supreme Court of the State has directed that its recorded be certified

here for examination and review, but no writ to that effect either in form or substance has ever issued from this court. As such a writ is necessary to our jurisdiction, the suit is dismissed."

In *Ex parte* Ralston, 119 U. S., 613, a writ of error to the Supreme Court of Lousiana had been allowed by the Chief-Justice of that court, and before any writ actually issued, an order that the writ should operate as a supersedeas was made by a justice of the United States Supreme Court. The latter court refused an application of Ralston for a mandamus to compel the clerk of the State court to transmit to the former court a transcript of the record of the cause, and also refused a motion made by the other side to vacate the supersedeas order, and held that as no writ of error had issued, they had no jurisdiction of the suit, and no authority over the clerk in the matter about which the mandamus was asked, and that, for the same reason, the supersedeas order was of no legal effect; that a supersedeas could not be allowed except as an incident to an appeal taken or a writ of error actually sued out.

It is to be observed that the statute does not require an order that on compliance with the supersedeas provisions the writ of error shall operate as a supersedeas. When the writ is allowed and issued, a compliance with the mere supersedeas provisions, though not authorizing a discharge of the prisoner, has of itself the effect of arresting or superseding otherwise the execu-

tion of the sentence. It gives the writ this effect; and this court in 1857, in a capital case, which had been brought here and continued for the term, refused to make an order that the writ should operate as a supersedeas, and held that such was the legal effect of the writ, without any order, upon compliance with the supersedeas provisions, and that it was to be obeyed by the ministerial officers of the law. It has, however, become the practice, notwithstanding the above decision, for the judge, justice or court, allowing the writ, to state in the order that the writ of error shall operate as a supersedeas, upon the requirements of the statute being complied with, and we see no harm in the practice; although it does not add anything to the effect of such compliance, it may aid the ministerial officers of the courts.

Had the writ of error been promptly issued in this case, we do not say the affidavits mentioned in the outset of this opinion would not have attached to it and given it the effect of a supersedeas, notwithstanding they were filed before its actual issue; we are inclined to think they would, but as no such writ has *ever* been issued, they are of no effect, and there has never been any suspension of the sentence. It should have been executed. If no application was made to the clerk for the issue of the writ, he should have delivered to the sheriff the warrant for executing the sentence, in compliance with section 35, p. 460, McClellan's Digest, and if it was delivered the sheriff should have execu-

ted it. There has been an omission of official duty, and one of a character which has, within the observation of each of the present members of the court, had the effect to embarrass the administration of criminal law to such an extent as to render these observations necessary; and if such omissions of duty are to recur, similar embarrassments must follow until the law provides a remedy; or the evil is otherwise corrected.

The motion must be denied, and it will be ordered accordingly.