## JOSEPH T. BELL

### v.

## JAMES H. JOHNSON.

*Filed at Ottawa November 17, 1884.*

1. FRAUD—*who may question a fraudulent transaction.* Only the person against whom a fraud is committed, or a person who is injured by it, can maintain a bill to have the fraudulent transaction impeached.

2. LIMITATION—*as to bill of review, or a bill to impeach a former decree for fraud.* A bill of review is barred in the same time as a writ of error, which is five years, unless there are disabilities. The rule applies to a cross-bill which seeks to have a former decree impeached for fraud.

3. SAME—*when availing on demurrer.* In equity the Statute of Limitations may be availed of, on demurrer to a bill, where the bar appears on the face of the bill, unless an equitable excuse is alleged in the bill to avoid the bar.

4. TAX TITLE—*prerequisites—judgment and precept.* In order to sustain a tax deed as a muniment of title, a valid judgment and attested record or precept must be shown. This is indispensable to the validity of the deed.

5. SAME—*requisites to a valid precept.* The Revenue law requires the county clerk, after the judgment for taxes is entered in the judgment book, to make another record of the lands, which is a transcript of the judgment record, embracing the convening order, notice, and list of the lands against which judgment is rendered, and certify that it is correct; and this attested record is the process under and by the authority of which the collector and clerk are empowered to make the sale. Without this attested copy of the judgment record there is no authority to sell.

6. CLOUD UPON TITLE—*tax deed—terms on setting it aside.* Where a tax deed is invalid for want of a proper precept or attested record, a court of equity has jurisdiction to declare it void, as a cloud upon the owner's title, and require the latter to refund the money paid at the tax sale, and all taxes paid by the purchaser or his assignee, with legal interest.

APPEAL from the Circuit Court of Carroll county; the Hon. JOHN V. EUSTACE, Judge, presiding.

Messrs. SMITH & LEE,· and Mr. M. Y. JOHNSON, for the appellant:

A party will not be permitted to question a transaction for fraud which in no way affects his interest.

Equity will consider the money advanced to purchase the outstanding title, as an advance for the benefit of the ward, and not for the conservator's own benefit, giving him usually a lien on the property for his reimbursement, being analogous to the case of trustee and *cestui que trust.* *Thorp* v. *McCullum,* 1 Gilm. 614; *Pensoneau* v. *Blakely,* 14 Ill. 15; *Robbins* v. *Butler,* 24 id. 387; *King* v. *Cushman,* 41 id. 31; *Taylor* v. *Taylor,* 4 Gilm. 303.

Under the law of 1853 the sheriff was the officer required to execute the tax deed,—under the consolidated act of 1872 the county clerk was made the officer to execute the tax deed. (2 Gross' Stat. p. 367, sec. 684.) Section 688, on the same page, made the previous six sections of that act applicable to all sales of real estate for taxes made before that act took effect; and section 689, on the same page, made tax deeds *prima facie* evidence of seven distinct things,—of every prerequisite, in fact, except the judgment and precept, the notice

required to be given by the purchaser, or assignee of the purchaser, to the person in possession or occupancy of the land purchased, and to the person in whose name the land was taxed, and the affidavit required to be made of compliance with the statute as to notices.

Messrs. HUNTER & HOFFMAN, for the appellee:

A tax deed is void unless founded on a valid judgment and precept. *Eagan* v. *Connelly,* 107 Ill. 458; *Gage* v. *Lightburn,* 93 id. 248; *Bailey* v. *Doolittle,* 24 id. 577; *Dukes* v. *Rowley,* id. 210; *Fitch* v. *Pinckard,* 4 Scam. 69.

A tax title is a purely technical, as contradistinguished from a meritorious, title, and depends for its validity upon a strict compliance with the statute. *Skinner* v. *Fulton,* 39 Ill. 484; *Altes* v. *Hinkler,* 36 id. 265; *Charles* v. *Waugh,* 35 id. 315; *Clark* v. *Lewis,* id. 417.

Appellant shows no excuse for his delay in attempting to get possession, which alone ought to defeat the tax title. *Oakley* v. *Hurlbut,* 100 Ill. 204.

Where a party has once conveyed all the interest he has in land, a subsequent quitclaim deed from him will pass no title. *Garrick* v. *Chamberlain,* 97 Ill. 620.

An ordinary quitclaim deed conveys whatever interest the grantor has at the time of making the same; and if he has no interest at the time, then it can not operate, by way of estoppel, to prevent him, or those claiming under him, from asserting a subsequently acquired title. *Frink* v. *Darst,* 14 Ill. 304.

The complainant in the cross-bill is not in possession, hence it will not lie to clear or test title. *Oakley* v. *Hurlbut,* 100 Ill. 204.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill filed in the Carroll circuit court, to have a tax deed set aside and declared void, as a cloud on complainant's title to a forty-acre tract of land in that county. The

bill alleges that the deed is void for the want of a valid judgment and precept to support the sale for taxes. Defendant answered the bill, and exceptions were filed to it, and sustained as to all but the tax deed. On leave of the court, defendant filed a cross-bill, alleging that the land was regularly sold by the collector on the 21st of May, 1871, for the taxes for the year 1870; that Francis Bell, the father of defendant, became the purchaser; that he gave the requisite notice to entitle him to a deed; that he sold and assigned the certificate of purchase to defendant; that the proper affidavit of notice was made, filed and delivered to the county clerk, in pursuance to the requirements of the law; that the county clerk made and delivered to him a tax deed; that there was rendered a valid judgment against the land, and a like precept was duly issued, under which the land was sold, and a paramount title thereby vested in him. The cross-bill further alleges, that about the 28th day of August, 1873, Robert Croom, who was the patentee, and living on the land, executed and delivered to an attorney at law, by the name of Orrin Woodruff, a mortgage on the forty acres in controversy, to secure a note given by him to Woodruff for $500, as an attorney's fee, for which Woodruff agreed to file a bill and conduct the suit for the purpose of setting aside and annulling defendant's tax deed; that Woodruff did file such a bill, which Croom voluntarily dismissed after being on the docket for several terms; that Croom was weak-minded, and was overreached by Woodruff in obtaining the note and mortgage; that Woodruff did not render the services under the contract, as agreed, and fearing to attempt to enforce such an extortionate fee, he made a colorable assignment of the note and mortgage to one Albert J. Jackson, in whose name foreclosure proceedings were commenced, and a decree of foreclosure was obtained after a partial defence, and on Croom's answer, which it is alleged was obtained by fraud, covin and misrepresentation by Woodruff, Jackson, and others; that on the

22d day of March, 1880, Croom and wife commenced a suit in chancery to impeach and set aside the decree of foreclosure, and the deeds made thereunder, charging that the deeds had been fraudulently obtained; that Woodruff was at all times the owner in fact of the mortgage, and was the real party in interest in all these proceedings; that all subsequent purchasers had notice of Woodruff's fraudulent acts, instituted for the purpose of defrauding Croom out of the land, and they had joined and conspired with him for that purpose; that during the pendency of that suit Johnson had been appointed conservator of Croom, and whilst he was conservator he had purchased the title of Early for $700, and had the conveyance made to himself, in his own name, and claims to be the absolute owner of the land, and he claims defendant's tax deed should be set aside as a cloud on his title; that having procured a conveyance to himself, he had dismissed the suit brought by Croom. It is also alleged, that on the 31st day of October, 1879, and before Croom became insane, and before complainant was appointed conservator for Croom, the latter conveyed the land to defendant by a quitclaim deed, in cancellation of a considerable debt Croom owed defendant's father. To this cross-bill there was filed a demurrer, which was sustained by the court. A trial was had, and the relief asked was granted, and complainant was decreed to pay defendant $33.50 for the money advanced in purchasing the tax title, and for interest thereon. From that decree defendant appeals, and assigns various errors for a reversal of the decree of the circuit court.

Was it error to sustain a demurrer to appellant's cross-bill? All the matter it contained and relied on for relief, related to frauds charged on Woodruff, appellee, and others, to the injury of Croom. Whilst, if the allegations are true, they no doubt afford ample ground for setting aside the note and mortgage given by Croom to Woodruff, and his assignment to Jackson, and his decree of foreclosure, as also Johnson's

purchase in his own name while acting as conservator, on an application by any person fairly representing Croom, it does not follow that appellant can assail and have these proceedings set aside for his own benefit. If there was a fraud perpetrated, it was against Croom, and not against appellant. It is a familiar rule that only the person against whom the fraud is committed, or a person who is injured by it, can maintain a bill to have the fraudulent transaction impeached. If, as claimed by appellant, he acquired all of Croom's title to this land by his tax deed, then Croom had no title out of which he could be defrauded by Woodruff, Johnson, or any one else. If, on the contrary, appellant's tax deed was void, then he had no title out of which he could be defrauded by Woodruff or Johnson. If he had no title, it does not concern him whether Woodruff or Johnson has defrauded Croom, or not. If he holds the title under his tax deed, then they acquired no title to the land by their proceedings, whether fraudulent or in good faith, because Croom had no title he could convey or of which he could be divested by legal proceedings,—hence there was no error in sustaining the demurrer to the cross-bill.

There is another view that may be taken of the question. The cross-bill was in the nature of a bill of review, and the bill, on its face, shows that the decree had been rendered more than five years when it was filed. The law is well settled that a bill of review is barred in the same time as a writ of error, and the statute bars such a writ in five years, unless there are disabilities. None exist in this case. The cross-bill in this case was therefore barred, and a demurrer having been filed to it, and the bar appearing from the bill itself, the objection was reached by the demurrer. The Statute of Limitations may be urged on demurrer where a bar appears on the face of the bill, unless an equitable excuse is alleged in the bill to avoid the bar. (*Board of Supervisors* v. *Winnebago Swamp Drain. Co.* 52 Ill. 299.) The doctrine is so

stated by Story in his work on Equity Pleading, sec. 484, and the text is fully sustained by authority. The demurrer was therefore properly sustained on that ground.

We now come to consider the question whether there was a valid judgment against the land for the taxes, and whether the sale was made under a valid precept. We are unable to perceive any substantial or even formal objection to the judgment. It seems to have been rendered in conformity to the statute. No want of conformity to the requirements of the statute has been suggested, nor do we perceive anything that militates against its validity. It will be necessary to refer to some provisions of the statute to determine whether the sale is shown to have been made under the required precept.

The 194th section of the chapter entitled "Revenue," provides: "The county clerk shall, before the day of sale, make a record of the lands and lots against which judgment is rendered, which shall set forth the name of the owner, if known, * * * in the same descriptive order as said property may be set forth in the judgment book, and shall attach thereto a copy of the order of the court, and his certificate that such record is correct. Said record so attested shall be the process on which all real property, or any interest therein, shall be sold for taxes or special assessments, as well as the record of the sale of such property." The 195th section provides: "On the day advertised for the sale, the collector shall report to the county clerk a list of all lands and lots upon which taxes and special assessments have been paid after the rendition of judgment; and the clerk shall note the fact of such payment opposite such tracts or lots, upon the record aforesaid."

Thus it is seen that there is required a judgment book, which consists of a corrected list made by the collector. This judgment book contains the convening order of the court, the collector's notice of application for judgment, etc., a list of the lands against which judgment is rendered, and to it is

added the judgment order, signed by the judge. The clerk is then required, before the day of sale, to make another record of the lands, which is a transcript of the judgment record, embracing the convening order, notice, list of lands against which the judgment is rendered, and certify that it is correct,—and this attested record is the process under and by the authority of which the collector and clerk are empowered to make the sale. Thus it is seen that there is a record and an attested record, and the latter is the process under which the collector acts in making the sale. The statute having prescribed a certified copy of the judgment record, it, and it alone, is the authority to sell. The collector has no more power to sell under the judgment record, than has a sheriff to sell property under an ordinary personal judgment. In such case it is the execution that confers the power, whilst in a sale of land for taxes it is the attested record that confers the power; and it is a settled rule that to sustain a tax deed, a valid judgment and attested record must be shown. This is indispensable to sustain the validity of the deed. So far as we can discover from this record, no attested record was read in evidence. The judge trying the case certifies that appellant read from the judgment record the convening order of the county court, the petition of the collector for judgment, and so much as embraced the name of Robert Croom, the description of the land, and the columns of figures annexed thereto, with their appropriate headings, and the name of F. Bell as the purchaser; but the record is barren of all evidence that an attested record was ever made, and much less that any such attested record was read in evidence. Having failed to produce an attested record, the tax deed can not be sustained as valid, and the title relied on under it must fail. The tax deed being invalid, the court below had jurisdiction to cancel and declare it void, as a cloud on appellee's title, and requiring appellee to refund the money paid

to purchase at the tax sale, and all taxes paid by the purchaser or his assignee, with legal interest.

Something is said about the sum decreed to appellant to reimburse him for money paid by him or his assignor to purchase at the tax sale, and for taxes on the land, being too small. There is no evidence that any taxes were paid by appellant, or his assignee of the certificate of sale for taxes. The amount decreed seems to be large enough to cover the money paid at the tax sale, and all interest thereon that has accrued since it was advanced.

Perceiving no error in the record, the decree of the circuit court is affirmed.

*Decree affirmed.*