THE PEOPLE EX REL., ETC.,

V.

JOHN S. BOYD ET AL.

Quo Warranto—*School Directors—Ouster—Consolidation of Districts—Sec. 5, Chap. 83, R. S.*

1.　A *quo warranto* proceeding is in the nature of a civil remedy.

2.　It *seems* that the statute of limitations applies when the proceeding is to enforce private rights.

3.　The writ may be denied merely on the ground of public policy.

4.　In a proceeding of this character, the object being to oust school directors from office and have the district in question declared void, the information having been filed more than five years after the formation of the district, this court holds that the writ was properly denied.

[Opinion filed May 25, 1889.]

IN ERROR to the Circuit Court of Kendall County; the Hon. C. W. UPTON, Judge, presiding.

This was an information for *quo warranto*, filed by the state's attorney of Kendall county in the Circuit Court of that county on the 27th day of July, 1887, against the appellees, to

The People v. Boyd.

compel them to show cause by what rights they claimed to hold the office of directors of school district number 1, T. 37 N., R. 7, E. of the 3d P. M. in said county. At the January term of said court' the appellees appeared and demurred to the information. The court sustained the demurrer, holding the application to be insufficient, and rendered judgment in favor of appellees on demurrer, from which judgment appellant has sued out a writ of error from this court seeking a reversal of the said judgment. The information alleges that prior to April, 1882, school district number one aforesaid was comprised of territory in the said township 37 and the N. ½ of Sec. 5 and the N. W. ¼ Sec. 4 in township 36 N., R. 7, E. 3d P. M. in said county, and for more than twenty years last past, prior to 1882, the directors of school district number one aforesaid had received and appropriated to the use and benefit of said district number one the school taxes levied upon and collected from the territory embraced in said town 36, belonging to said school district number one, as aforesaid, including taxes collected from the personal property of residents of said district number one aforesaid, residing in said district number one aforesaid, in said township 36, and the benefit and advantages so arising from the taxes so collected had been enjoyed by the citizens of said district for and during all that time. And the state's attorney aforesaid further gives the court to understand and be informed that for more than twenty years last past, prior to 1882, school district number three, township 37 north, range seven aforesaid, was comprised of territory and lands described as follows, to wit: Section 28, 29, part of Sec. 30, S. W. ¼ Sec. 27, all of Sec. 32 and 33 north of Fox river, in said town aforesaid.

The state's attorney further gave the court to understand that on the third day of April, 1882, an attempted consolidation of said school districts numbers one and three was made, and resulted in the formation of a pretended district number 1, T. 37 N., R. 7, E. 3d P. M., comprising lands aforesaid, townships 36 and 37 aforesaid; that on or about said 3d day of April, 1882, a petition praying for a consolidation of said districts was presented to the trustees of schools of said township 37; that on

the 13th day of April, 1882, said petition was acted on and
the prayer thereof granted and the said consolidation of the
said two districts attempted and pretended to have been made,
and from that time to the present its pretended school officers
have received and appropriated to its school purposes the school
taxes from the whole of said territory lying in said two town-
ships aforesaid illegally, and without any warrant or authority
of law, and have assumed to perform the duties of school
directors of said district number one as so pretended to be
formed, and have collected and received taxes, contracted
indebtedness and imposed taxes on the whole of said pretended
district without warrant of law.

For points of illegality the information shows in substance:

1st.   The petition praying for consolidation was never pre-
sented, as required by statute, to the trustees of schools of
township 36 aforesaid, and such trustees never acted in such
petition or upon the attempted consolidation, but the alleged
consolidation was wholly made by the trustees of schools of
township 37 aforesaid.

2d.   Said petition was not filed with the trustees of schools
of said township 37 twenty days before the regular meeting
in April, 1882.

3d.   No notice of said petition was filed nor copy delivered
to the president or clerk of the board of directors, or either
of them, of said districts one and three, as required by law,
and the school directors of district number one had no notice
of the presentation of said petition to said board of trustees,
or of the time and place when said petition was to be acted
upon by said board of trustees.

4th.   The clerk of the board of trustees of said township
37 did not make a complete copy of said action of the trustees,
certified by the president of the board of trustees and clerk,
and file the same, together with a map of the township show-
ing the districts and an actual list of the taxpayers of the
newly arranged districts, with the county clerk within twenty
days of the action of the trustees.

5th.   That the said trustees failed to order an election
within fifteen days to elect a board of directors of said newly

The People v. Boyd.

formed district, after the action forming the district, or give ten days notice of such election, as required by the statute.

6th. The board of trustees failed to make any order of the action upon said petition, or file the same as required by statute, or make any legal record of their action in said petition.

7th. The regular meeting of the board of trustees was on the 3d day of April, 1882, and the petition was not acted upon by said board on the 13th, as required by statute.

8th. The petition was insufficient in law, in that it did not aver that said change and consolidation was petitioned for by a majority of the legal voters of each of said districts affected by the proposed change or by any legal voters ; nor that the change and consolidation was petitioned for by two-thirds of the legal voters living within certain territory to be affected by said change and consolidation ; nor by two-thirds of the legal voters living within certain territory containing not less than ten families, asking that said territory be made a new district ; nor that the territory to be affected by said change and consolidation contained not less than ten families ; nor that the people of said district were not properly accommodated with school facilities and privileges, but would be by the proposed change ; and the said petition did not contain any or a proper description of the territory to be affected by the proposed change and consolidation.

The above are all the causes relied upon as showing the illegality of the new district.

Messrs. FITZGERALD and FOWLER BROS., for appellant.

Messrs. CHARLES WHEATON and R. P. GOODWIN, for appellees.

LACEY, P. J. The appellee questions the sufficiency of the information in the respect that it does not show upon its face in proper legal form any grounds of illegality in the proceedings and formation of the new district number one.

But we are inclined to think that at least some of the causes, though not all, set out, are in legal form and would be

sufficient if the information had been filed in apt time. As the decision of the case hinges upon whether the statute of limitations is a bar to the prosecution of the information, or whether, if not strictly a bar to all *quo warranto* proceedings, the lapse of time in this class of cases is not sufficient grounds to deny the writ, we will not further occupy our time in consideration of the questions raised as to the sufficiency of the petition on its merits in case of its having been filed in proper time.

It is insisted on the part of appellee that the *quo warranto* is a civil action and that the statute of limitations of five years runs against it. Sec. 15, Chap. 83 of the R. S. This section provides, among other things, that "all civil actions, not otherwise provided for, shall be commenced within five years next after the cause of action accrued."

It is also claimed, and the position is not controverted, that the statute of limitations may be interposed by demurrer where the petition or declaration discloses the proper facts, as in this case, to raise the question. Henry Co. v. Winnebago Drainage Co., 52 Ill. 454; Ilit v. Collins, 103 Ill. 74; International Bank v. Jenkins, 104 Ill. 143; Bell v. Johnson, 111 Ill. 374.

On the other hand, the appellant replies that the question involved here respects public rights and is prosecuted by the state's attorney in his official capacity, and that the statute of limitations will not run against a proceeding of this kind; and, as showing this to be a question respecting public rights, cites Cheshire v. People ex rel., 116 Ill. 493. The appellant also cites from the opinion of the court in Logan Co. v. City of Lincoln the following passage, to wit: "Our understanding of the law is that, as respects all public rights or as respects property held for public use upon trust, municipal corporations are not within the statute of limitations." The question presented involves a consideration of the nature and character of a *quo warranto* proceeding. In the first place, what is the nature of the action? Is it civil or criminal? If civil, does the above statute of limitations apply to the action in all cases or in any case? Is the writ one of right, or the issuance of it

The People v. Boyd.

within the sound discretion of the court regulated by law and precedent?

In the first place, we think there can be no question but that the action is, at this day, however it formerly might have been, regarded by the law as in the nature of a civil remedy, and it has been so decided by the Supreme Court of this State. People v. Shaw, 13 Ill. 581; Ensminger v. People. 47 Ill. 384. The *quo warranto* proceeding is used to enforce both public and private rights. Its purpose is dual, and the law as regards the statute of limitations ought to, and · we think does, apply to the action, at least where its object is to enforce private rights as distinguished from that to enforce public rights; and, in addition to this, the writ will be refused even before the statute of limitations runs, in certain cases where the object sought is to enforce private rights, and in some other proper cases, when public policy requires that the writ should not issue in such cases. As showing how the question has been regarded at common law, we will quote some extracts from the decisions of distinguished English judges, and passages from text-books. In King v. Stacey, Durnford & East, Vols. 1 and 2, p. 1, Lord Mansfield says: "I remember when it was the practice to grant *quo warranto* information as a matter of course; but now, since these matters have come more under consideration, it is no longer a matter of course, and the court are bound to consider all the circumstances before they disturb the peace and quiet of any corporation. The next thing the court took into consideration was the length of time within which they would grant information. It was customary to never refuse for any length of time, but as the inconvenience and vexation of this were plainly perceived the court were desirous to go by a certain rule, and therefore the time was indefinite by the common law and fixed by no statute; they drew a line by analogy by the statute of limitations in ejectment; they drew it for twenty years, and this has been acquiesced in by the bar and parliament where it was once mentioned. * * * But when the court laid down the general rule, they also said that it may be refused within twenty years upon other circumstances to war-

rant the court to say you shall not make use of the King's name for such and such purposes. The court is bound to guard the corporations etc. Yet the King may prosecute by his attorney-general." In The King v. John Newling, Vols. 3 and 4, Durnford & East, 171 (315), Butler, Justice, said: "Lord Mansfield has repeatedly said that the meaning of the rule was, that let the case be what it might, if twenty years have elapsed the relator shall not be made to make any application whatever; but we all remember from that time to the present, cases in which the court has refused to grant *quo warranto* information within that time; as where it appears the relator might have come sooner, or where a judgment against a defendant would tend to a dissolution of a corporation."

Afterward, in Rex v. Decken, 4 Term, 282; it was held that the statute of limitations of six years applied as against a person in peaceable possession of his franchise for six years. See also High on Extraordinary Remedies, 692.

High on Extraordinary Remedies, Sec. 603, says: " In modern times the remedy as a means of criminal prosecution has fallen into disuse, and has come to be regarded as a purely civil remedy, which, though partaking in some of its forms and incidents of the nature of criminal process, it is yet a strictly civil proceeding, resorted to for the purpose of testing a civil right by trying the official title to an office or franchise and ousting the wrongful possessor."

It is said that the state's attorney in this case is prosecuting in his official capacity and not for the benefit of any private person, and hence in this form the statute of limitations or lapse of time should not interfere to arrest the prosecution. This appears to be the form of the prosecution, yet we think the court will always look into the nature of the object sought to be obtained rather than to the form of the prosecution in determining the question of lapse of time and statute of limitations as applicable to the case. If the state's attorney should file information in his official capacity, when, in fact, he was only representing the private rights of an individual, the court would not be bound to so regard it if the nature of the case and objects sought showed the contrary. This, we think, is

clearly deducible from the opinion in The People ex rel. North Chicago Ry. Co., 88 Ill. 537. The proceedings in the case before us show exactly what the object sought is. Directly, it is to oust from office the three school directors named, and indirectly, to declare the district void, and this would be the result if a judgment of ouster were rendered. The public undoubtedly has enough interest in the matter to entitle it to be called a public prosecution to the extent that the state's attorney might omit the name of a relator, or he might proceed under the name of a relator, as was held in Cheshire v. People ex rel., 116 Ill. 493. We apprehend the statute of limitations and the lapse of time would operate against the prosecution in a given case in whatever form it might assume. If this were not so, form and not substance would govern the substantial rights of parties. It would seem to us that this case ought to fall within that class of cases where the statute of limitations should apply, and the right to file the information should be refused on the grounds of public policy, even before the lapse of five years, if the time elapsed were such that a wrong would be done by granting the writ. In the case of the Trustees of Schools v. The School Directors, 88 Ill. 100, an application for a writ of *certiorari* in a case almost exactly like this was refused, where only three years had elapsed after the consolidation of the districts into the one complained of, on the grounds that there had been unreasonable delay in asking for the writ.

The same was held in Board of Supervisors v. Magoon, 109 Ill. 142. The court say, in the first above named case, that after the consolidation, "the school funds were appropriated in accordance with such changes, and the presumption is that taxes for school purposes were thus levied and collected. It may be also that debts have been incurred in building or repairing school-houses, or for other legitimate school purposes, upon the faith of the action of the trustees, now for the first time sought to be questioned. The case, in our opinion, is clearly one where, by reason of the lapse of time, and the acquiescence of the party now complaining in the distribution of the school funds, the levy and collection of school taxes, and

possibly the incurring of debts upon the faith of the action of the trustees, it was improper to allow the writ, but having been allowed, it should have been quashed on motion. It is better, if it shall be desirable, by appropriate steps, through the proper school officers, to reorganize the districts as they were before, than to open an indefinite field of strife and litigation by now nullifying the action of the trustees and thereby declaring everything done pursuant thereto illegal."

It will be noted that the rules of law in regard to granting writs of *certiorari* are the same as to granting the information in *quo warranto* proceedings. The reasons for refusing the *certiorari* in that case are the same as present themselves here.

In the case at bar, the information expressly avers that the directors of the new district, number one, have incurred and contracted debts. We do not have to resort to conjecture as to that fact. The reason for refusing such writs is because "these bodies exercise powers in which the people at large are concerned and great public detriment or inconvenience might result from interfering with their proceedings." *Ibid.*, 88 Ill. 100. In other words, after a considerable lapse of time public policy forbids that discretionary writs like those in *quo warranto* and *certiorari* should be granted. In this case more than five years have elapsed since the formation of the district in question, and during that time the majority of the people in the district had the power to change it, if they saw proper, to the original districts. In the language of the opinion of the Supreme Court above quoted, " it is better, through the proper school officers, to reorganize the districts, if it is desired, as they were before, than to open up an indefinite field of strife and litigation by now nullifying the action of the trustees and thereby declaring everything done pursuant thereto illegal." If this information had been filed at once, appellant would have been entitled to file it; but by lapse of time we think the statute of limitations above quoted has run against it, and if that were not the case, under the circumstances the information at this time ought not to be allowed to be filed. We do not wish to be understood as deciding—because the ques-

tion is not presented—that the statute of limitations above quoted in all cases of informations in case of *quo warranto* would be a bar; but certainly in this case we think it would, and the courts where the question is presented may even apply it in all cases. The demurrer was properly sustained. The judgment of the court below is therefore affirmed.

*Judgment affirmed.*

Judge UPTON, having tried the case in the court below took no part in the decision in this case.

C. B. SMITH, J. I concur in affirming this judgment, but I place my judgment expressly and solely on the ground that it would now be against public policy and the best interest of the district to again open up this controversy after the lapse of so long a time. The people ought to be estopped under the particular facts in this case. I do not think the statute of limitations can be invoked to bar the action.