# W. S. ALLISON *et al.*

## *v.*

# GEORGE A. DRAKE *et al.*

*Filed at Ottawa, November 23, 1892.*

1. BILL OF REVIEW—*limitation—when barred.* A bill of review for matters apparent upon the face of the record, or to impeach a decree for fraud, can be brought only within the time allowed for the bringing of a writ of error—five years—the complainant being under no disability and not ignorant of his rights. And the rule is the same in the case of a cross-bill, in the nature of a bill of review, to impeach a decree.

2. SAME—*delay in filing—excused by infancy.* Where a party seeking to impeach a decree for the fraud of her solicitor is shown to have had knowledge of the fraud almost seven years before filing her bill, and no good reason is shown for the delay, the same will be filed too late, and the delay will be fatal. But the infancy of a party filing such a bill will excuse the delay.

3. SAME—*defects therein—how waived.* If the defendant in a bill of review, which fails to set out in full the pleadings and decree in the matter sought to be reviewed, answers the same and goes to a hearing on the pleadings and proof, treating the bill as sufficient, this will amount to a waiver of the defect in the bill, and objection to the sufficiency of the bill can not be urged in this court.

4. FRAUD—*of solicitor—who may complain by bill of review.* Where one tenant in common of land makes a contract with a solicitor to procure a partition of the same for a fixed price, and the solicitor takes a decree for a much larger sum as his fee, this will be a fraud on the rights of such client; but one of the defendants, who is in no sense a privy to such contract, can not take advantage of the fraud thus practiced, by bill of review to impeach the decree.

5. Where a solicitor in a partition proceeding becomes the purchaser of land on an execution issued for solicitor's fee and costs, he will be chargeable with notice of fraud in the decree; but a purchaser from him without notice, either actual or constructive, of the fraud, will be protected against a bill of review seeking to set aside the decree of partition and the sale on the ground of such fraud.

6. NOTICE—*lis pendens.* The doctrine of *lis pendens* is that a suit in chancery, prosecuted in good faith and followed by a decree, is constructive notice to every person who acquires from a defendant *pendente lite* an interest in the subject matter of the litigation, of the legal and equitable rights of the plaintiff as charged in the bill and established by the decree. Where the bill pending at the time of the pur-

chase is abandoned or dismissed, the purchaser will not be chargeable with notice of the facts set up in the bill.

7. The ground of *lis pendens* rests upon the legal necessity of subjecting to the final decree all rights acquired *pendente lite* without bringing the parties acquiring such rights into court and making them parties, and it, therefore, has no place where there is no adjudication and no decree, and the bill is voluntarily abandoned or dismissed by the complainants.

8. A *lis pendens* begins, where a bill is filed, from the service of summons and not before; and where there is no service, and the defendant does not appear, there is no *lis pendens*.

9. Infant—*decree against, by agreement—when it may be set aside.* A decree against an infant by agreement of the parties, without evidence heard sustaining the bill, is erroneous, and it may be set aside on bill of review, but not as against a *bona fide* purchaser for value without notice of the error.

10. A decree against an infant is so far binding that he can not impeach it, either by a bill of review, or by any other proceeding, so as to prejudice the interest of *bona fide* purchasers without notice. This is true, whether the judgment or decree is sought to be set aside on the ground that there was error in the judgment in not giving a day to show cause, or error in other respects, or whether the judgment or decree was obtained by the guardian for the purpose of defrauding the infant of his estate.

11. Judgments and Decrees—*when a decree is final.* A decree is final, so as to authorize an appeal, when it fixes and settles the rights of the parties. A final decree is not necessarily the last order in a case, as orders sometimes follow merely for the purpose of carrying out or executing the matters which the decree has determined.

12. A decree setting aside a former partition of land for error in the proceeding, and ordering a new partition fixing the interests of the several parties and appointing commissioners to divide the land, setting aside a sheriff's deed made under a sale on execution, and requiring the defendants to account for the rents and profits of the land, is a final decree, for the purpose of an appeal or writ of error, notwithstanding the account is not stated, as the proceedings under the order of reference to the master are in the nature of an execution of the decree.

Appeal from the Circuit Court of Grundy County; the Hon. Dorrance Dibell, Judge, presiding.

On the 26th day of January, 1889, George A. Drake filed his bill in chancery, in the Circuit Court of Grundy county, against John Allison and Lavina Davis, to review

a certain former decree of that court, to set aside an execution sale and subsequent conveyances of certain lands of the complainant, and for an accounting. The bill alleges that, on or about August 7, 1862, Jacob Mayer departed this life intestate, leaving him surviving his widow and thirteen children; that at the time of his death he was seized in fee of certain lands in Grundy county, described in the bill by courses and distances, and containing 171.71 acres, excepting 4.70 acres lying in the south-west corner of the land, which had been sold by Mayer, in his lifetime, to William Marsh, his son-in-law, by contract, but never conveyed, leaving 167.01 acres; that Mayer's widow died January 13, 1876, and that the title of said land became vested in his thirteen children, disincumbered of dower; that Catherine Mayer, one of the children, intermarried with Alonzo Drake, and that the complainant is the sole issue of such marriage, and was born April 27, 1866; that the complainant's mother died intestate, leaving her surviving her husband, and the complainant, her only child and heir-at-law, whereby complainant became vested with an undivided one-thirteenth of said 167.01 acres of land, subject to the dower estate of his father, who resided in Gage county, in the State of Nebraska; that in April and May, 1877, ten of the children of Jacob Mayer sold and quit-claimed their respective interests in the land to Lavina Davis, and that in December, 1879, one other of the children sold and conveyed his interest to Mary A. Davis, who, on the 15th day of February, 1888, conveyed her interest thus acquired to Lavina Davis.

The bill further alleges that, at the March term, 1881, of said court, Elizabeth Marsh, a daughter of Jacob Mayer, and wife of William Marsh, filed her bill for the partition of said lands, making the present complainant, Lavina Davis, Mary A. Davis and certain other parties, defendants; that on the 15th day of March, 1881, a rule was entered in that cause requiring all the defendants to plead, answer or

demur to the bill by the coming in of court on the following Wednesday; that on the 17th day of the month an order was entered referring the cause to the master to take proofs; that on the 23d day of the same month, an order was entered which, after reciting that it appeared to the court the present complainant was a minor, appointed W. T. Hopkins his guardian *ad litem*, and ordered such guardian to answer *instanter;* that thereupon this complainant, by his guardian *ad litem*, filed his answer, and that on the same day the order of reference to the master was vacated, and by agreement of the parties a decree was entered awarding partition of the land, and appointing commissioners to make the same.

It is further alleged that the commissioners made partition of the land and platted the same, and awarded to Elizabeth Marsh lot 1, to the present complainant lot 2, to Mary A. Davis lot 3, and to Lavina Davis lot 4, lots 1, 2 and 3 containing 12.84 acres each, and lot 4 containing the residue of the land; that the commissioners filed their report November 29, 1881, and on the following day a final decree was rendered approving and confirming the report, and partitioning the land in accordance therewith; that such final decree ordered that the costs and expenses of the proceedings, including the sum of $300 solicitor's fees, to be taxed and paid to the complainant's solicitor; that Lavina Davis, Mary A. Davis, Elizabeth Marsh and the present complainant each pay one-fourth of the costs, and that in default of such payment execution issue therefor, and be a lien upon all of the several interests in said land, and be collected from all or either of such interests.

The bill further alleges that Elizabeth Marsh, the complainant in the partition proceedings, was an elderly lady, of little education and no financial means, and that she made a special contract with the solicitor who filed her bill, by which the latter undertook to file such bill for partition and perform all the necessary legal services in effecting the

partition, and pay the costs of the proceeding, for $150, that sum to be divided into thirteen equal shares, and that each share in the land should be charged with one-thirteenth thereof, that is to say, with the sum of $11.54 each; that the claim and allowance of $300 solicitor's fees was in violation of said contract, and that the knowledge of its allowance never reached her until after the execution of the sheriff's deed, in pursuance of the execution sale for said costs; that Elizabeth Marsh settled with her solicitor on the basis of said contract, and paid him her share of the costs in full, and took from him a receipt therefor; yet said solicitor, in violation of his agreement, on the 6th day of February, 1882, sued out an execution against all of the parties for $375.40, the amount of the costs; that $184.45 was paid on the execution by Lavina Davis and Mary A. Davis, and the writ was thereupon returned by the sheriff unsatisfied as to the residue; that May 6, 1882, an alias execution was issued for the collection of the residue of the costs, and levied on lot 1 as the property of Elizabeth Marsh, and on lot 2 as the property of George A. Drake, the present complainant, and on June 3, 1882, the sheriff struck off and sold the two lots for $104.79 each, said solicitor becoming the purchaser, and on September 3, 1883, the sheriff executed and delivered to the solicitor a deed conveying the two lots to him, and on the same day the solicitor conveyed the lots to John Allison for an expressed consideration of $386.25.

The bill further alleges that the affidavit of non-residence filed in the partition suit gave the post-office address of George A. Drake and Alonzo Drake, his father, as Steele City, Jefferson county, Nebraska, instead of Odell, Gage county, Nebraska, their true post-office address, and that consequently they did not receive any copy of the notice of the pendency of the suit, and that neither of them had any notice or knowledge of its pendency until after the sheriff had levied on the lots as aforesaid; that George A. Drake arrived at his majority April 27, 1887.

It is further alleged that Lavina Davis had the use, rents and profits of the 167.01 acres of land, including the complainant's share therein, from 1877 to 1883, both years inclusive, and that John Allison had the use, rents and profits of the complainant's share from 1884 to 1888, both inclusive, and that the use of the land during all that time was worth $4 per acre per annum; that the land, at the time of the attempted partition, was worth $40 per acre, and has not since depreciated in value.

The bill prays that the decree of partition be reviewed and reformed, so far as it affects the interest of George A. Drake, not as to the quantity or quality of the share allotted to him, but as to the taxation of the costs and the allowance of $300 solicitor's fees, instead of the sum provided for by contract, thus making his share of the costs $11.54, and which sum he tenders and offers to pay into court, or if the court should be of the opinion that the sum of $300 was just and reasonable, he tenders and offers to pay $28.37, with lawful interest, being one-thirteenth of such solicitor's fee and court costs, as taxed in pursuance of said decree; also that the alias execution be quashed, the levy and sale thereunder vacated and set aside, and the sheriff's deed and the record thereof be canceled, and that John Allison be decreed to convey lot 2 to the complainant, and for an accounting with Lavina Davis and John Allison in respect to the rents and profits of the land, and also a general prayer for relief.

John Allison having died, his legal representatives were made parties defendant. Lavina Davis also having died, the complainant, on the 18th day of July, 1890, filed an amended and supplemental bill, Elizabeth Marsh and William Marsh, her husband, joining as co-complainants therein. By the amended and supplemental bill the legal representatives of Lavina Davis were made parties defendant. William B. Marsh set up his equitable title under a contract executed by Jacob Mayer, in his life-time, to a

small tract of about three acres in the south-west corner of the lands in controversy, and prayed that the legal title thereto be conveyed to him. Elizabeth Marsh set up her title, as heir-at-law of Jacob Mayer, deceased, to an undivided one-thirteenth of the 167.01 acres of land. The amended and supplemental bill attacked the proceedings in the partition suit by alleging, in addition to the matters alleged in the original bill, there was a variance between the final decree and the commissioners' report, so as to make it impossible to take the descriptions in the decree and report and locate the lands therefrom; that the lot set off as the share of George A. Drake was less valuable per acre than any other portion of the land; that the decree in the partition suit failed to locate the tract claimed by William B. Marsh, and that its location and description was left to the commissioners in making the partition. It also reiterated the averments of the original bill in relation to the alleged contract between Elizabeth Marsh and her solicitor in relation to solicitor's fees.

The amended and supplemental bill prayed that the partition proceedings be absolutely set aside and vacated; that the sheriff's sale of lots 1 and 2, and the deed issued in pursuance thereof, and also the deed from the purchaser to Allison, be set aside and canceled; that a new partition of the lands be awarded and commissioners appointed to make the same, and also a general prayer for relief.

The legal representatives of John Allison, answered, denying the equities of the bill, and claiming title to lots 1 and 2 as *bona fide* purchasers for value. The legal representatives of Lavina Davis, being infants, answered by their guardian *ad litem.* Replications were duly filed, and the cause being heard on pleadings and proofs, a decree was entered finding the facts to be as alleged by the complainants, and decreeing that, on account of the manifold errors appearing on the face of the partition proceedings and decree, as well as the fraudulent conduct of the solicitor

ALLISON *et al.* *v.* DRAKE *et al.* 507

Statement of the Case. Brief for the Appellants.

for the complainant therein, said proceedings and decree, together with the sheriff's deed, and the deed from the purchaser at the sale to Allison, be set aside and vacated, and that the representatives of Allison be ordered to convey lot 1 to Elizabeth Marsh, and that upon payment to them by George A. Drake of the sum of $11.54, they be ordered to convey lot 2 to him. The decree also found the interests of the several parties to the suit in the 167.01 acres of land to be as alleged in the bill, and ordered that partition thereof be made, and appointed commissioners to make such partition. It also decreed that an accounting be had in relation to the use and occupation of the lands, and ordered a reference to the master for that purpose. From this decree W. S. Allison, executor of the last will and testament of John Allison, deceased, has appealed to this court and assigned errors. The further facts are sufficiently stated in the opinion of the court.

Mr. S. C. STOUGH, for the appellants:

John Allison, the deceased, as grantee, for a valuable consideration from a purchaser at a judicial sale, was only held to enquire whether the court from which his grantor obtained title had jurisdiction of the subject matter and of the parties. *Goudy* v. *Hall,* 36 Ill. 313; *McLagan* v. *Brown,* 11 id. 523; *Young* v. *Loraine,* 11 id. 637; *Iverson* v. *Lobes,* 26 id. 179; *Fitzgibbon* v. *Lake,* 29 id. 165; *Feaster* v. *Fleming,* 56 id. 457.

If the court has jurisdiction of the parties and subject matter of a controversy, and the party against whom the judgment is rendered has had either actual or constructive notice of the pendency of the suit, no error can render the judgment void. *Mulford et al.* v. *Stalzenback,* 46 Ill. 303; *Buckmaster* v. *Carlin,* 3 Scam. 104; *Swigart* v. *Harber,* 4 id. 364; *Rockwell* v. *Jones,* 38 Ill. 160; *Maloney* v. *Dewey,* 127 id. 395.

The title of a purchaser not a party to the record while the judgment remains in force, will be enforced, regardless

of errors of law that may exist in the proceedings. *Hobson et al.* v. *Ewan*, 62 Ill. 146; *Feaster* v. *Fleming*, 56 id. 457; *Fergus et al.* v. *Woodworth et al.*, 44 id. 374.

The title of a purchaser, not himself at fault, can not be impaired at law nor in equity by showing any mere error or irregularity in the proceedings. *Dingledine* v. *Hershman*, 53 Ill. 280.

An execution sale can not be avoided because of an incorrect taxation of costs. *Wilkins* v. *Huse*, 9 Ohio, 154.

A purchaser at a judicial or execution sale can not be prejudiced by any secret vices, frauds or defects in the proceedings. *Mansfield* v. *Hoagland*, 46 Ill. 359.

The title derived under an execution sale can not be defeated at law, nor vacated, restrained nor otherwise impaired in equity for fraud, unless it is shown that the person by whom such title is held, was cognizant of the fraud for which it is sought to make him responsible. *Fetterman* v. *Murphy*, 4 Watts, 424; *Beeson* v. *Beeson*, 9 Pa. St. 289.

The sale of an infant's property in chancery, although no one was appointed to defend for the infant, the court having obtained jurisdiction, though made in an erroneous manner, is not void. Rorer on Judicial Sales, sec. 487; *Calkins* v. *Johnson*, 20 Ohio State, 539; *Robinson* v. *Redman*, 2 Duvall, 82.

The *lis pendens* and the subsequent constructive notice to purchasers only begin from the service of summons after the filing of the bill, so that the court may have acquired jurisdiction of the defendant. Pomeroy's Eq. Juris., vol. 2, sec. 634; *Allen* v. *Pool*, 54 Miss. 323 and 333; *Allen* v. *Mandeville*, 26 id. 397 and 399; *Center* v. *The Bank*, 22 Ala. 743; *Farmer's National Bank* v. *Fletcher*, 44 Iowa, 252; *Murray* v. *Ballou*, 1 Johns. Chan., 566 and 567; *Haden* v. *Bucklin*, 9 Paige, 512; *Leith* v. *Wells*, 48 N. Y. 585.

If the suit be abandoned or voluntarily dismissed, it can not affect a purchaser during its pendency. Freeman on

Judgments, sec. 203; *Herrington* v. *McCullom*, 73 Ill. 476; *Newman* v. *Chapman*, 2 Rand. 93; *Watson* v. *Wilson*, 2 Dana, 408; *Herrington* v. *Herrington*, 27 Mo. 560.

The decree of a court having jurisdiction of the subject matter and of the person of even an infant against whom it is rendered, will not be set aside as against third parties who have in good faith acquired rights under it, although, as against original parties to the suit and their legal representatives, another rule might obtain. *Lloyd* v. *Kirkwood*, 112 Ill. 329; Freeman on Judgments, sec. 513.

A bill of review to impeach a decree for fraud or for error appearing upon the face of the record is barred in the same time as a writ of error, which is five years. *Bell* v. *Johnson*, 111 Ill. 374; *The Chicago Building Society et al.* v. *Haas et al.*, 111 id. 176.

The delay of *laches* in equity does not in all cases conform to the Statute of Limitations. It goes farther in the promotion of justice, and holds there is *laches* in many cases where there would be no bar to an action at law. In some cases two years' delay has been held to bar relief.

The court, in applying *laches* as a bar, acts on broader and more comprehensive rules than the Statute of Limitations. *Walker* v. *Ray*, 111 Ill. 315; *Hoyt* v. *Pawtucket Institute*, 110 id. 390; *Dobins* v. *Wilson*, 107 id. 17; *Stagger et al.* v. *Bent*, 111 id. 328.

Mr. P. A. ARMSTRONG, for the appellees:

Nothing can be admitted as against infants, but strict proof must be made of everything which injuriously affects their rights. *Waugh* v. *Robbins*, 33 Ill. 181; *Quigley* v. *Roberts*, 44 id. 503; *Barnes* v. *Hazelton*, 50 id. 429.

The rule of *caveat emptor* applies to judical sales. *Wing* v. *Dodge*, 80 Ill. 564; *Blue* v. *Blue*, 38 id. 9.

The pendency of the former bill at the time of the purchase was notice of the facts therein alleged.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the
Court:

The appellees have moved to dismiss the appeal, on the
ground that the decree appealed from is not final. This
contention is based upon the fact that the decree, after
definitely and finally determining the rights of the parties
by vacating and setting aside the decree in the former
partition suit and all proceedings thereunder and ordering
a reconveyance to the complainants by the representatives
of Allison of lots 1 and 2, and also fixing the respective
interests of the several joint tenants in the land in contro-
versy and ordering partition thereof between them and
appointing commissioners for that purpose, also awards
the complainants an accounting in respect to the use and
occupation of the lands, and refers the cause to the master
to take and state such account. We are of the opinion
that the decree is final so as to authorize an appeal to this
court, notwithstanding the order for an accounting. A
final decree is not necessarily the last order in the case, as
orders sometimes follow merely for the purpose of carry-
ing out or executing the matters which the decree has
determined, but when it finally fixes the rights of the
parties, it is final and may be reviewed on appeal or writ of
error. *Myers* v. *Manny,* 63 Ill. 211; *Bostwick* v. *Brinker-
hoff,* 106 U. S. 3; *St. L., I. M. & S. R. R. Co.* v.
*Southern Express Co.,* 108 id. 24. That is done by the
present decree, and the proceedings under the order of
reference are only in the nature of an execution of the
decree.

The point is made that the bill, being a bill'of review, or
a bill in the nature of a bill of review, is insufficient because
it fails to set out, *in extenso,* the pleadings and decree in
the matter sought to be reviewed, and in support of this
contention we are referred to *Aholtz* v. *Durfee,* 122 Ill.
286, and other decisions in which the same rule is laid down.
In this case, however, the question as to the insufficiency

of the bill in this respect is raised for the first time in this court. No exception was taken to the frame-work of the bill in the court below by demurrer or otherwise, but the defendants answered, and went to the hearing on pleadings and proofs, treating the bill throughout as though it contained a sufficient statement of the proceedings sought to be reviewed. We think this may be regarded as a waiver by the defendants of the defect in the bill, and an admission on their part that the proceedings referred to were sufficiently set out to present the errors of law which were claimed to be apparent upon the face of the record, and to entitle the complainants to the relief prayed for. An objection to a bill of this character raised for the first time in this court can not be sustained.

But we are of the opinion, in the first place, that the decree rendered in this case, so far as it relates to Elizabeth Marsh, can not be sustained. The final decree sought to be reviewed was entered November 30, 1881, and she became a party to the present suit, by intervening and joining as co-complainant to the supplemental bill, March 4, 1889. She thus delayed the bringing of her bill of review seven years and a little over three months after the rendition of the decree which she now seeks to set aside. She was laboring under no disability which stood in the way of her bringing her suit to have the former decree reviewed or to impeach it for fraud, nor are any adequate reasons given for the delay. Under these circumstances, her bill is brought too late. A bill of review for matters apparent upon the face of the record can be brought only within the time allowed for the bringing of a writ of error, viz., five years, the complainant being under no disability. *Dolton* v. *Erb,* 53 Ill. 289; *Pestel* v. *Primm,* 109 id. 353. And the rule is the same in case of a cross-bill in the nature of a bill of review to impeach a decree. *Bell* v. *Johnson,* 111 Ill. 374. And, in general, a bill of review to impeach a decree for fraud is barred in the same time, unless some

very clear reason is shown for the delay.  *Sloan* v. *Sloan*, 102 Ill. 581; *Chicago Building Society* v. *Haas*, 111 id. 176.

Mrs. Marsh's bill is not a bill of review for errors apparent upon the face of the record, as she sets up no errors of that character which are prejudicial to or affect her interests, but she seeks to impeach the former decree on the ground of fraud in her own solicitor, who, after agreeing with her to obtain the partition and defray the costs and expenses of the proceeding for $150, one-thirteenth of that sum only to be charged against her, fraudulently procured the entry of a decree against her and the other parties to the suit for a solicitor's fee of $300, in addition to the other costs, and afterward, although Mrs. Marsh had paid him in full her portion of the stipulated fee, charged one-fourth of the decree for the solicitor's fee and costs upon the land set off to her and had the same sold under execution therefor.   She alleges in her bill and testifies that she did not become aware of the fraud of her solicitor until after the expiration of the statutory redemption from the sale, nor until Allison, the grantee of the purchaser, demanded of her possession of the land sold.

Her testimony as to the time she learned of the alleged fraud perpetrated upon her by her solicitor is strongly contradicted, if not conclusively disproved, by the fact appearing in evidence, that on the first day of June, 1882, which was before the sale of her land on execution, she and Alonzo Drake, the guardian of George A. Drake, filed their bill in chancery in the Circuit Court of Grundy county against the sheriff of said county and her solicitor in the partition proceedings, setting up the same contract with her solicitor as to solicitor's fees upon which she now relies, and its violation by the procuring of the decree for $300 solicitor's fees and costs, and alleging that an execution for one-half of said solicitor's fee and costs was then in the hands of the sheriff and had been levied upon lots

1 and 2 which had been set off in said partition proceedings to Mrs. Marsh and George A. Drake, and were about to be sold on such execution, and praying for an injunction restraining the sale of said lots thereunder. That bill seems to have been verified by the affidavit of Mrs. Marsh, to the effect that she had read the bill and knew the contents thereof, and that it was true of her own knowledge except as to the matters therein stated on her information and belief, and that as to those matters she believed it to be true. It does not appear that any steps were taken by way of prosecuting that bill, and the evidence shows that it was dismissed January 23, 1884, on motion of the complainants therein, at their costs. It does not seem possible, in view of that bill and Mrs. Marsh's affidavit of verification appended thereto, that her present claim, that the fraud which she alleges had been perpetrated upon her by her solicitor first came to her knowledge at a much later date, can be true, as the evidence to the contrary furnished by her bill and affidavit seems nearly, if not quite, conclusive.

It thus appears that the fraud, on account of which she is now seeking to impeach the decree in the partition suit, must have come to her knowledge almost seven years before she became a party to the present suit. No reason is shown for this long delay, and her bill therefore comes too late.

The foregoing obstacle in the way of Mrs. Marsh's impeaching the partition decree does not obtain in case of her co-complainant, George A. Drake, as he was an infant at the time the decree was rendered, and did not attain his majority until April 27, 1887, and his bill was filed January 26, 1889, which was less than five years after his disability of infancy terminated. He seeks to impeach the decree, in the first place, on the same ground set up by Mrs. Marsh, viz., the fraud of Mrs. Marsh's solicitor in obtaining a decree for solicitor's fees and costs in contravention of his agree-

ment with her, and this was the only ground, as his bill was originally framed, upon which his claim for relief was based. In that bill he asked to have the former decree reversed and reformed, as was expressly stated in the prayer, not as to the quantity or quality of the share allotted to him, but as to the taxation of costs and the allowance of solicitor's fees, in violation of the contract with Mrs. Marsh.

It seems very clear to us that his prayer for relief can not be sustained on this ground, for two reasons. In the first place, nothing is shown which gives to George A. Drake any right to avail himself of the contract between Mrs. Marsh and her solicitor, or to enforce that contract in his own behalf. Mrs. Marsh and he were merely tenants in common of the land to be partitioned, each owning an undivided one-thirteenth. Mrs. Marsh was not his guardian, nor is she shown to have in any way stood in such relation to him as to be able to make any contract which would be binding on him or to which he would be in any sense a party. She was about to bring a suit for partition, and so far as the record before us tends to show, it could not then be foreseen whether the proceeding would be amicable or contested. She was to be the complainant and George A. Drake and others were to be the defendants, and for the purpose of instituting and prosecuting the suit, she employed a solicitor. The solicitor employed represented her alone and not the defendants. She was at liberty to enter into any lawful contract with him, and having done so, she had the right to avail herself of its benefits, and its violation by the solicitor was doubtless a wrong, and probably, under the circumstances, a fraud upon her. But upon what principle the defendants to the suit, who, so far as shown, were in no sense privy to the contract, and had conferred no power on Mrs. Marsh to contract in their behalf, can come in and avail themselves of its benefits, and charge that its violation was a fraud upon them, we are unable to comprehend.

In the next place, there is no evidence tending to charge Allison, the grantee of the purchaser at the execution sale, with either actual or constructive notice of the fraud. The purchaser at the execution sale was the solicitor himself, and he of course was chargeable with notice. But not so as to Allison, his grantee. The bill charges that Allison was the real purchaser at the execution sale, and that the solicitor bid off the property merely as his agent, and immediately, on obtaining title, conveyed the land to him in pursuance of such previous arrangement, but there is no evidence tending to sustain that allegation.

So far as we can see, there is nothing in the record tending to charge Allison with actual or implied notice of the alleged fraud of the solicitor at the time the land was conveyed to him, but it is claimed that he was chargeable with constructive notice. As has already been stated, Mrs. Marsh and the guardian of George A. Drake, shortly prior to the execution sale, filed their bill setting up the alleged fraud of the solicitor, and praying for an injunction restraining the sale. That bill was pending at the time of the conveyance to Allison, and was afterwards dismissed without a hearing or decree, on motion of the complainants therein. The claim is set up that as that bill was pending at the time Allison obtained title, he was chargeable with constructive notice of its allegations, upon the principle of *lis pendens.*

There is no pretense that Allison had any actual notice of the bill or its allegations, and we are of the opinion that the rule of constructive notice by *lis pendens* has no application. "The doctrine of *lis pendens* is one by which a suit in chancery prosecuted in good faith, *and followed by a decree,* is constructive notice to every person who acquires from a defendant *pendente lite* an interest in the subject matter of the litigation of the legal and equitable rights of the plaintiff, as charged in the bill *and established by the decree.*" Bispham's Eq., sec. 274. It is therefore held that

a purchaser of real estate *pendente lite,* in circumstances such that he is affected with notice as by *lis pendens,* is bound by the result of the litigation, and takes subject to the rights so determined. *Cable* v. *Ellis,* 120 Ill. 136; *Alwood* v. *Mansfield,* 59 id. 496; *Dickson* v. *Todd,* 43 id. 504; *Jackson* v. *Warren,* 32 id. 331; *Asher* v. *Mitchell,* 9 Ill. App. 335. The doctrine of *lis pendens* rests upon the legal necessity of subjecting to the final decree all rights acquired *pendente lite* without pausing to bring parties acquiring such rights into court and to make them parties to the litigation, and it consequently has no place where there is no adjudication and no decree, and the bill is voluntarily abandoned or dismissed by the complainants.

But there is another reason why the bill in this case can not have the effect of a *lis pendens.* There is no evidence in the record that any summons was ever issued thereon or served, or that the defendants to the bill ever appeared in court in the suit. A *lis pendens* begins, where a bill is filed, from the service of summons and not before, and where there is no service and the defendant does not appear, there is no *lis pendens.* *Grant* v. *Bennett,* 96 Ill. 513; *Hallorn* v. *Trum,* 125 id. 247; *Bank* v. *Taylor,* 131 id. 376.

In both the original and in the amended and supplemental bill, George A. Drake alleges errors apparent on the face of the partition proceedings and decree, and in the latter bill he prays to have the partition proceedings absolutely set aside and vacated, and that a new partition be made. The principal error alleged is, that the partition decree appears to have been entered by the agreement of the adult parties to the suit, and without any hearing upon pleadings and proofs.

The facts, as shown by the record, seem to be, that a guardian *ad litem* for Drake was appointed, who answered for his ward *instanter;* that the cause was referred to a master to take proofs, but that the order of reference was subsequently vacated, and that the complainant and the

adult defendants having filed an agreement in writing con-
senting to a partition of the premises described in the bill
for partition, the cause came on to be heard on the bill, the
answer of the guardian *ad litem,* and said agreement, and
that on such hearing the court found the rights of the
parties to be as alleged in the bill, and ordered the land to .
be partitioned accordingly, and appointed commissioners to
make the partition.

There can be no doubt that a decree rendered against an
infant under these circumstances is erroneous. We so held
in *Gooch* v. *Green,* 102 Ill. 507. In that case a decree for
partition, where one of the parties was an infant, was
rendered by agreement of the adult parties, the guardian
of the infant joining in the agreement. We there held
that the agreement could have no bearing, as the infant
could not be bound or concluded by it; that, in a proceed-
ing in chancery, a decree can not be properly rendered
against an infant, unless it be founded upon or sustained by
evidence. So in *Quigley* v. *Roberts,* 44 Ill. 503, the rule
was laid down, that a decree can not be rendered against
an infant, unless it be on proof of the allegations of the
bill.

This error in the decree in the partition proceedings
would doubtless have been sufficient to entitle Drake to
have the decree set aside as against the original parties to
it. But whether he is entitled to such relief as against Al-
lison or his heirs is quite another question. Allison was a
purchaser for value from the grantee in the sheriff's deed,
and, so far as appears, his purchase was *bona fide.* In *Lloyd*
v. *Kirkwood,* 112 Ill. 329, we said: "A decree against an
infant, like that against an adult, is absolute in the first
instance subject to the right to attack by original bill, for
either fraud or error merely, but until so attacked, and set
aside or reversed on error or appeal, it is binding to the
same extent as any other decree or judgment. This right
to attack a decree by original bill may be exercised at any

time before the infant attains his majority, or at any time afterwards within the period in which he may, under the statute, prosecute a writ of error for the reversal of such decree.   *   *   *   The rule thus established is, of course, subject to the qualification that the decree of a court having jurisdiction of the subject matter of the suit and the person of the infant against whom it is rendered, will not be thus set aside as against third parties who have, in good faith, acquired rights under it; but as against original parties to the suit and their legal representatives, the rule as above stated will be enforced.''

In Freeman on Judgments, sec. 513, it is said: ''An absolute decree against an infant is, at least, so far binding on him, that he can neither by bill of review, nor by an original bill, nor by any other proceeding, impeach it so as to prejudice the interests of *bona fide* purchasers without notice. This is equally true, whether the judgment or decree is sought to be set aside on the ground that there was error in the judgment of the court in not giving a day to show cause, or error in other respects in the judgment rendered, or whether the judgment or decree was obtained by the guardian or other representative of the infant, for the purpose of defrauding him of his estate.''

The rule thus laid down seems to be well sustained by the authorities, and applying it, we are unable to see how, as against Allison and his heirs, any ground is shown for setting aside the partition decree.

The decree of the Circuit Court will be reversed and the cause will be remanded to that court, with directions to dismiss the bill so far as it relates to lots 1 and 2, conveyed by the purchaser at the sheriff's sale to Allison.

*Decree reversed.*